UNITED STATES of America,
Plaintiff-Appellee,

v.

Demetri THOR and Richard Lynn
Barnett, Defendants-Appellants.

No. 74–3034.

United States Court of Appeals,
Fifth Circuit.

May 7, 1975.
Rehearing Denied July 25, 1975.

George Wm. Perry, Dallas, Tex. (Court appointed), for Thor.

James F. Newth, Dallas, Tex., for Barnett.

Frank D. McCown, U. S. Atty., Harold S. Jaquet, Asst. U. S. Atty., Ft. Worth, Tex., Charles D. Cabaniss, William F. Sanderson, Jr., Asst. U. S. Attys., Dallas, Tex., for plaintiff-appellee.

Before BELL, THORNBERRY and GEE, Circuit Judges.

BELL, Circuit Judge:

Appellants Thor and Barnett were convicted of possessing with intent to distribute a controlled substance (methamphetamine) in violation of 21 U.S.C.A. § 841(a), and of conspiring to manufacture and possess with intent to distribute the same in violation of 21 U.S.C.A. § 841(a). Additionally, in a consolidated case, Barnett was found guilty of carrying a firearm unlawfully during the commission of a felony in violation of 18 U.S.C.A. § 924(c)(2). Others were charged with appellants in the drug counts. Two of these, Carey and Lee, pleaded guilty and testified at the trial. We affirm.

The evidence adduced at trial showed that Agent Glass of the Drug Abuse Law Enforcement Agency had arranged a drug sale with Carey to be consummated in a Dallas shopping center parking lot on December 12, 1972. According to plan, Glass met Carey at a white panel truck (an old bread truck) in the parking lot. A short time later appellant Barnett, accompanied by Lee, drove by the truck in a Dodge Charger, letting Lee out of the vehicle with the methamphetamine. Lee and Carey were forthwith arrested. Barnett was arrested in the same parking lot five to ten minutes later, after he had driven a short distance from the truck and returned. He was relieved at the time of his .357 magnum pistol. Federal officers were deployed within approximately one hundred yards of the white bread truck and testified as to their observations. Thor was tied to the transaction through ownership of the truck, purchase of a safe in which the methamphetamine was placed by Lee in the truck, and purchase of the labels or the methamphetamine bottles. He witnessed the transaction from a safe vantage point and left the state when he realized that his confederates had been arrested.

Barnett assigns three errors. The first goes only to him. He contends that there was no probable cause for his arrest at the parking lot and hence the pistol should have been suppressed. We disagree. There was ample probable cause to support Barnett's arrest. The officers saw him deliver Lee and a pack-

age to the truck in the parking lot and leave in a vehicle being driven by him. The officers were at the scene for the purpose of apprehending those participating in the sale to Agent Glass. Barnett returned to the scene within five to ten minutes and was then arrested and the pistol removed from a shoulder holster. By the time of his arrest, the surveilling officers knew that the package delivered by Lee contained what purported to be the methamphetamine.

Barnett's other assignments of error are adopted by Thor. Both have to do with the testimony of co-actor Lee who, after testifying against Barnett for the government, was called two days later by Barnett and thereupon repudiated his testimony. He stated that in his earlier testimony, he was only saying what the prosecutor and drug agent had told him to say.

■ At this point the court made a remark which would have been better left unsaid but which we do not find to be reversible error. The court, after inquiring if Lee was saying that the prosecutor told him to testify to something that was not true and after Lee had answered in the affirmative, said to Lee, "I don't believe that." The court took corrective action almost immediately in terms of two cautionary instructions. The small import of the statement is seen in the fact that no motion for a mistrial or even for a cautionary instruction was made, defense counsel simply remarking that the court had reflected on "the competence of the evidence." We need not reach any question as to the right of the trial judge to comment on the evidence where the safeguard of a cautionary instruction is supplied. *See* Quercia v. United States, 1933, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321; United States v. Jacquillen, 5 Cir., 1972, 469 F.2d 380. Rather, we hold that the error here, if any, was harmless in light of the overwhelming evidence against Barnett, the contrary earlier testimony of Lee, and his written confession to the contrary. *Cf.* Chapman v. California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705

and Harrington v. California, 1969, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284, on harmless error.

■ This occurrence ties in to the other assertion of error in connection with witness Lee. He testified for the government on direct. There was no cross-examination and no reservation whatever by defense counsel as to delaying cross-examination. As stated, two days later, after the government rested, Lee was called by Barnett's counsel and repudiated his earlier testimony insofar as it implicated Barnett. The government then offered Lee's confession to impeach him and Barnett's counsel contended that this was improper because he had Lee on cross-examination and the government could not impeach its own witness. The plain answer to this claim is that Lee was called as a defense witness and any claim to the contrary is spurious.

■ Appellant Thor claims error in the action of the trial court in permitting Agent Glass to remain in the courtroom as the representative of the government despite the invocation of the rule to exclude witnesses. This was a discretionary matter with the court and we find no abuse of discretion. Del Cristo v. United States, 5 Cir., 1964, 327 F.2d 208.

The remaining assignments of error are also by Thor. He contends that his two written confessions together with the formula for manufacturing methamphetamine, given to federal officers in Dallas, were inadmissible because of the taint of a confession given a few weeks earlier to state officers in California. The vice found in the California confession was based on the four day delay of the state officers in taking Thor before a state magistrate.

■ The ruling of the district court denying the admission of the California confession on this ground gave Thor more than his due under the decisions of this circuit. Thus the short answer to his allegation of taint is that there was no taint. In Kulyk v. United States, 5

Cir., 1969, 414 F.2d 139, we held that a statement made to a state officer while the defendant was detained in violation of the Georgia statute requiring that a prisoner be brought before a magistrate within 48 hours of arrest was admissible in a trial on federal charges. Thor was not in federal control when he gave the California confession, and there is no factual basis whatever, indeed no claim, of a working arrangement between state and federal officers to obtain such a confession. *Cf.* United States v. Rollerson, 5 Cir., 1974, 491 F.2d 1209.

■ A receipt for the safe, discussed *supra,* and a newspaper clipping giving details of the December 12, 1972 shopping center drug arrests were found in Thor's vehicle when he was arrested in California and while it was being inventoried. There was no error in admitting these items. He was arrested after he removed a pistol from his belt as he approached his vehicle and after throwing in into his vehicle, all in the plain view of the arresting officers. The plain view and exigent circumstances probable cause exception to the Fourth Amendment warrant requirement is well known. *See, e. g.,* United States v. Lopez-Ortiz, 5 Cir., 1974, 492 F.2d 109; United States v. Cushnie, 5 Cir., 1973, 488 F.2d 81; United States v. Allen, 5 Cir., 1973, 472 F.2d 145; United States v. Ragsdale, 5 Cir., 1972, 470 F.2d 24.

Thor's last contention is that he was denied a speedy trial. Some detail as to dates will be helpful on this question. The drug arrests in Dallas were on December 12, 1972. Thor departed Dallas on the same date for Oklahoma. He was next heard of in California in late December 1972, when he was approached by state officers as a robbery suspect and arrested on the weapons charge heretofore discussed. He returned to Dallas on his own volition in January 1973 and gave the confessions there in January and February. He next appeared in Oklahoma in an undercover capacity for D.A.L.E., but had no contact with the agency after March or April 1973. Thereafter, on September 26, 1973, he was indicted on the drug charges.

■ Up to this point we find no violation of appellant's right to a speedy trial. The interval between commission of the drug offense and indictment did not extend beyond the applicable statute of limitations and was not unreasonable. Moreover, no actual prejudice is shown, and there is no support for any Fifth Amendment due process claim that the delay was an intentional device to gain a tactical advantage over the accused. *See* United States v. Marion, 1971, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468; Kroll v. United States, 5 Cir., 1970, 433 F.2d 1282; United States v. McGough, 5 Cir., 1975, 510 F.2d 598.

An arrest warrant was issued for Thor on September 27, 1973 and was returned unexecuted on October 19, 1973. Subsequently, in January 1974, he was arrested in Oregon by state authorities while residing there under the alias Grady Fite. He resisted removal to Texas on the Texas warrant. He requested and received an identity hearing which resulted in an order for his removal to Texas dated February 26, 1974 on the drug charges.

■ The real basis for the claim of a denial of the right to speedy trial began at this point. Thor describes what he terms an odyssey beginning March 12 in the form of a seventy-three day trip from Oregon to Texas by motor transportation. It develops that he spent from one night up to twelve nights in state or federal prisons en route plus a period of forty days in the federal prison at Marion, Illinois. The forty day delay at Marion was the result of a mix-up in identity between Thor and another prisoner who was in fact delivered to Dallas. (The government requests a remand to show Thor's part in this mix-up in the event the court should determine that the delay may have resulted in the denial of a speedy trial).

Thor demanded a trial on July 8, 1974 and was tried beginning July 17, 1974. Counsel had been appointed for Thor on May 29, 1974. Having in mind the fugi-

tive status of Thor after the indictment, the delay in removal from Oregon at his instance, the delay in reaching Texas, the demand for trial and the trial date, we apply the balancing test of Barker v. Wingo, 1972, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, where the court said:

> We regard none of the four factors identified above [length of delay, reason for delay, defendant's assertion of his right, and prejudice to the defendant] as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. . . .

Id. at 533, 92 S.Ct. at 2193.

*Cf.* Moore v. Arizona, 1973, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183; Prince v. State of Alabama, 5 Cir., 1975, 507 F.2d 693.

The thrust of Thor's contention under the balancing test is that the delay contributed to the disappearance of witnesses, interfered with his liberty and right of association, subjected him to public obloquy, drained his resources, and created anxiety in himself and his family. It may not be gainsaid that delay of trial can cause all of these results, but we must examine the delay in light of the facts of the particular case. Accordingly, we do not find that the delay rises to constitutional proportions. We have also examined the contention in light of Rule 48(b), F.R.Crim.P. and we find no violation of that rule.

As to missing witnesses, we find that none could have offered evidence relevant to Thor's defense, given his confession. There was no prosecutorial theory of his presence during the drug arrest. Thor's counsel had ample time within which to prepare such defense as he had. The interference with his liberty and right of association, any public obloquy, drain on resources and anxiety, was minimal when considered with his fugitive status, resistance to removal, and the time of the trial. Moreover, some of the witnesses were fugitives and had been since the indictment.

We find no denial of the Sixth Amendment right to speedy trial nor of a violation of Rule 48(b), F.R.Crim.P.

Affirmed.