LEON LEVI WILSON AND JAMES WILLIS GREEN *v.* STATE OF MARYLAND

[No. 163, September Term, 1976.]

*Decided December 29, 1976.*

The cause was argued before GILBERT, C. J., and MORTON and MASON, JJ.

*Bradford C. Peabody, Assigned Public Defender*, with whom were *Alan H. Murrell, Public Defender*, and *Arthur A. DeLano, Jr., Assistant Public Defender*, on the brief, for appellants.

*Bruce C. Spizler, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City*, and *William Monfried, Assistant State's Attorney for Baltimore City*, on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

Appellants, Leon Levi Wilson and James Willis Green, were each convicted by a jury in the Criminal Court of Baltimore (Sklar, J., presiding) of robbery with a dangerous and deadly weapon and use of a handgun in the commission of a crime of violence. Additionally, Wilson was found guilty of assault. Wilson was sentenced to twenty years imprisonment for the robbery, concurrent to a ten year term for the handgun violation and consecutive to a four year term for the assault. Green received concurrent eight year terms for the robbery and the handgun charge.

Because we agree with the appellants' contention that they were denied their constitutional right to a speedy trial, no elaboration of the facts leading up to their convictions is necessary. Suffice it to say that they accosted the male victim with a gun and robbed him of $22.

Both appellants were arrested on November 30, 1974. Their case was first called for trial on June 23, 1975, but was postponed because not enough jurors were available. The trial, rescheduled to begin on October 17, 1975, was again

postponed by the State because no court was available when appellants prayed a jury trial.

Wilson filed a motion to dismiss his indictment for lack of a speedy trial on October 22, 1975. The motion was heard and denied on January 13, 1976, by Judge Hargrove. On the other hand, Green first requested a speedy trial on October 28, 1975. He filed a motion on January 7, 1976, to dismiss the indictment for lack of same. The motion was heard and denied by Judge Sklar on January 19, 1976.

After the October 17, 1975, postponement, the trial was rescheduled to begin on January 13, 1976, at which time it was postponed once again, this time because Green's counsel was unavailable. One week later, on January 19, 1976, the trial began. Both appellants were incarcerated continuously from the date of their arrest to the date of the trial.

In treating their contention that they were denied a speedy trial,[1] we note, at the outset, that the length of delay between the date of arrest and date of trial, 13 months and 3 weeks, is of sufficient "constitutional dimension" to "trigger" the four-fold analytical process enunciated in *Barker v. Wingo*, 407 U. S. 514, 530 (1972), *Jones v. State*, 279 Md. 1 (1976) and *Epps v. State*, 276 Md. 96, 109 (1975). The four factors in the balancing test are (a) length of delay, (b) the reason for the delay, (c) the defendant's assertion of his right and (d) prejudice to the defendant.

Dealing with the factors in their order of ascending pre-eminence in this case, we first consider the Defendant's Assertion of Right prong. Appellant Wilson moved to dismiss the indictment for lack of speedy trial on October 22, 1975, while appellant Green filed a motion for speedy trial on October 28, 1975, as well as a motion to dismiss for lack of same on January 7, 1976.

Both appellants were arrested on November 30, 1974. Both appellants endured postponements of trial on June 23, 1975,

---

1. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *." U.S. Const. Amendment VI.

"That in all criminal prosecutions, every man hath a right * * * to a speedy trial by an impartial jury * * *." Art. 21, Maryland Declaration of Rights.

and October 17, 1975. Neither appellant demanded a speedy trial until after that point. Thus, it was not until after two postponements and nearly 11 months from the date of arrest that appellants sought affirmatively to assert their right to a speedy trial. Thereafter, the State moved with reasonable expedition, approximately three months, to bring appellants to trial.

While *Barker* explicitly rejected the "demand-waiver" rule, it added the following caveat:

> "This does not mean, however, that the defendant has no responsibility to assert his right. We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right. Such a formulation * * * would * * * allow a court to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely *pro forma* objection." *Barker, supra,* at 528-29.

It is our view that whatever weight is to be accredited to appellants by reason of their demand for a speedy trial, it is counter-balanced by the fact that they waited until after two trial postponements and eleven months to do so; a lack of frequency in their demands; and the State's diligent effort to try them thereafter. We balance this factor to be neutral with minimal significance to be given either side.

It is clear, in light of *Barker,* that here the State must shoulder the blame under the Reason for Delay prong. *See, e.g., Evans v. State,* 30 Md. App. 423, 428 (1976). Appellants were twice ready to proceed with the trial only to have it postponed because "not enough jurors were available" and "no court was available." "[T]he ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker, supra,* at 531. *Barker,* however, noted that "different weight should be assigned to different reasons. * * * A more neutral reason such as negligence or overcrowded courts should be weighed less heavily" than a deliberate attempt to delay the trial for

tactical purposes. *Id.* We balance this prong in appellants' behalf but attach to it minor weight in light of the circumstances.

In considering the Length of Delay prong,[2] we treat it with the Prejudice to the Defendant prong since, in this case at least, the two are inextricably meshed.

> "A certain quantitative and qualitative degree of delay gives rise to a rebuttable presumption of prejudice and will shift the burden of going forward with the evidence from the accused to the State. Before that critical point is reached, there rests upon the accused, as the moving party, the burden of persuading the hearing judge that he has suffered actual prejudice or the strong possibility of prejudice. Once that critical point has been reached, however, the presumption of prejudice arises and the burden of going forward with the evidence shifts to the State. That critical point on the delay scale where the presumption arises and the burden shifts has been denominated the point of 'substantial' delay. *Lawless [State v. Lawless*, 13 Md. App. 220 (1971)], at 233; *Stevenson v. State*, 4 Md. App. 1, 13-15, 241 A. 2d 174." *State v. Jones*, 18 Md. App. 11, 27 (1973).

Thus, unless the delay is "substantial," [3] the burden of going

---

**2.** In this calculation we have used January 19, 1976, as the cut-off date when measuring the delay. Actually, with regard to Green, the proper cut-off point is January 13, 1976, since the subsequent six day delay was caused by the absence of his counsel and thus, not attributable to the State. Wilson, on the other hand, was ready to proceed with the trial on January 13, 1976, but was made to wait six days so that he could be tried together with Green. As such, there are viable reasons why the January 19, 1976, date is the appropriate measuring rod with regard to him. We see no need to render a ruling on this matter since we conclude that the additional six days are of little, if any, consequence in reaching the ultimate speedy trial determination. For present purposes, therefore, the cut-off date when measuring the delay for both appellants will be January 19, 1976.

**3.** There is, of course, a distinction between the threshold inquiry into whether the delay was of "constitutional dimension" in the *Barker* sense and the later inquiry as to "substantial" delay. Under this approach the Court looks first to see if there is some minimal delay which "triggers" an examination into the four prong test. While a short delay may be sufficient to warrant a scrutiny of the surrounding circumstances, a somewhat longer

forward with evidence to demonstrate prejudice rests upon the accused. We presently view this determination to be extremely crucial in light of the fact that no direct evidence of prejudice was demonstrated at the hearing below on the speedy trial issue.[4] Appellants, however, point to those types of prejudice that are inherent in any delay prior to trial, to wit: "personal factors" in the *Barker* sense and an impairment of witnesses' ability to recall details. Prejudice of this nature, however, will be "presumed" only when the delay is "substantial."

But in the circumstances here, the delay of 13 months and three weeks cannot be deemed insubstantial and must be considered of sufficient length to invoke the presumption of prejudice and shift the burden to the State to produce evidence which will demonstrate that the appellants suffered no prejudice by reason of the delay. In the record before us the State failed to provide even a scintilla of such evidence. In fact, the State made no effort whatsoever to carry its burden which in this instance it may or may not have been able to shoulder successfully. While we are sympathetic to the problems imposed by an overcrowded docket, especially in Baltimore City and other urban centers, the right to a speedy trial is one of the hallmarks upon which our criminal justice system rests. We simply cannot countenance a delay in excess of 13 months as a necessary evil resulting from our society's ills. When the delay reaches this dimension, the justice which is due an accused is jeopardized. By shifting to the State the burden of demonstrating lack of prejudice to the appellants, we endeavor to keep the interests of justice in balance. Since the State failed dismally to meet its burden, we weigh the

delay of "substantial" length is necessary to "trigger" the presumption of prejudice. *See* State v. Jones, *supra*, at 22-23, 27-29.

4. Appellants note that "[d]uring the interval of the delay in this case, Appellant Wilson lost contact with one potential witness." An examination of the record reveals that this loss pertains solely to the delay between January 13, 1976, and January 19, 1976, a delay attributable to the absence of Green's counsel. *See* note 2, *supra*. We find it unnecessary, however, to examine the ramifications that this might have on Wilson since we conclude that this potential loss is more speculative than factual and does not amount to a demonstration of prejudice.

Length of Delay and Prejudice prongs heavily in appellants' favor.

Thus, balancing the four factors we observe that they are either neutral or are weighted in appellants' behalf. We conclude, therefore, that appellants were denied their right to a speedy trial guaranteed them under both the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights. "Since dismissal of the indictment is the only possible remedy when a speedy trial has been denied, *Barker v. Wingo, supra; Strunk v. United States* [412 U. S. 434 (1973)] * * * we are reluctantly constrained, upon constitutional grounds, to conclude that the indictment upon which * * * [Wilson and Green were] * * * convicted must be dismissed." *Epps, supra,* at 121.

We do not reach the remaining contentions raised by appellants.

> *Judgments reversed; costs to be paid by the Mayor and City Council of Baltimore.*