467 A.2d 1052

**Melvin Dwayne POWELL**

v.

**STATE of Maryland.**

**No. 137, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Nov. 9, 1983.

Certiorari Denied Feb. 21 and April 2, 1984.

352

Michael R. Braudes, Asst. Public Defender, with whom was Alan H. Murrell, Public Defender, on the brief, for appellant.

No brief or appearance for appellee.

Submitted before GILBERT, C.J., and ALPERT and BLOOM, JJ.

ALPERT, Judge.

Vernon Brooks was murdered on December 12, 1979. Two years and nearly nine months later, Melvin Dwayne Powell (appellant) was convicted of that murder in the second degree and was later sentenced, pursuant to Md.Code Ann. Art. 27, § 643B (1957, 1982 Repl.Vol.) to a period of incarceration of 30 years without parole.

After noting a timely appeal, appellant complains that:
 I. He was denied his constitutional right to a speedy trial.
 II. He is entitled to dismissal of the charges as a result of the State's lack of compliance with the Interstate Agreement on Detainers.
 III. The trial court erred in instructing the jury that the testimony of a single eyewitness is sufficient to sustain a conviction.
 IV. The evidence was not sufficient to sustain a mandatory sentence without parole under Article 27, § 643B.

Since we hold that appellant's complaints as to the first three issues are without merit, we shall affirm the conviction of murder in the second degree. Because the evidence was not sufficient to sustain a mandatory sentence without parole under Article 27, § 643B, we shall vacate the sentence and remand this case to the Circuit Court for Baltimore City for imposition of a proper sentence.

I. *Speedy Trial*

A. *The Chronology*

12/12/79 Vernon Brooks was stabbed in the chest at about 8:30 P.M. and died later that day.

12/13/79 An arrest warrant was issued charging appellant with the Brooks murder.

3/18/81 Appellant was arrested by federal authorities in New York for a parole violation and was incarcerated in that State. Federal parole was subsequently revoked and he was sentenced to eight months.

4/7/81 Baltimore City Police wrote to the United States Marshall Service in New York requesting that Appellant be detained as a result of murder charges in Maryland. That communication purportedly[1] included a copy of the district court warrant charging Appellant with the murder of Brooks, and asked that this warrant be treated as a detainer.

4/9/81 Appellant, incarcerated in New York, received a letter from his "case manager" informing him that Maryland authorities wanted him detained in New York. Appellant asked his case manager for forms to enable him to file for a speedy trial under the detainer statute. She responded that the Maryland authorities had failed to comply with the procedural requirements for a formal detainer, so he could not request a speedy disposition. While incarcerated, Appellant's transfer to a lower-security area was revoked because of the alleged Maryland detainer.

4/22/81 Appellant was indicted for the murder of Vernon Brooks.

6/81 (specific date unspecified) Appellant transferred to Petersburg, Virginia, to serve the balance of his federal

---

1. Although the letter refers to an enclosed "true test" copy of a District Court warrant charging the above-named subject with "Murder/First Degree," a copy of the warrant does not appear anywhere in the record of this case. Trial counsel did not contest the fact that the warrant was enclosed.

sentence. While there, he was informed that his scheduled transfer to a "halfway house" would not go through because of the Maryland charges.

9/13/81 Maryland authorities filed a "formal detainer" according to uncontradicted evidence introduced at the hearing on the motion to dismiss for lack of speedy trial.

9/29/81 The "formal detainer" was received by the appropriate federal authorities.

10/2/81 Appellant requested a speedy trial under the Interstate Agreement on Detainers.

11/24/81 Appellant was transferred to Maryland.

12/15/81 Appellant was arraigned. Case set for trial on March 29, 1982.

3/29/82 Case postponed at Appellant's request, because new counsel had entered the case and needed time for preparation. Case rescheduled for August 17, 1982.

8/17/82 Case postponed because prosecutor was on vacation.

9/8/82 Trial began.

## B. *The Law*

Sometime before trial appellant apparently[2] moved to dismiss the charges because he was denied his constitutional right to a speedy trial and further because the State violated the Interstate Agreement on Detainers.

 There is no constitutional right to be tried within a specified period of time. Denial of the right must be determined on a case-by-case basis balancing both the conduct of the defendant and the State. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Epps v. State,* 276 Md. 96, 345 A.2d 62 (1975). A four factor test has

---

**2.** The trial judge acknowledged the filing of such motion but the paper itself is not part of the record in this case. Perhaps the trial judge was referring to that part of an "omnibus motion" where the appellant moved "[t]hat all charges against this defendant be dismissed for that there are defects in the institution of the prosecution and the charging document."

evolved for determining whether a particular defendant has been denied a speedy trial. Those four factors are:

1. Length of delay.
2. Reason for delay.
3. The defendant's assertion of the right.
4. Prejudice to the defendant.

The balancing of the four factors is required only when *the length of the delay* is of constitutional dimension. *State v. Lawless,* 13 Md.App. 220, 283 A.2d 160 (1971), *cert. denied,* 409 U.S. 855, 93 S.Ct. 192, 34 L.Ed.2d 99 (1972). The delay herein being 33 months and 27 days, as explained *infra,* is of constitutional dimension.

### 1. *Length of Delay*

The appellant became an accused entitled to a speedy trial upon commencement of his prosecution by way of arrest, warrant, information or indictment, whichever first occurred. *State v. Hunter,* 16 Md.App. 306, 311, 295 A.2d 779 (1972). *See also Gee v. State,* 54 Md.App. 549, 459 A.2d 608 and *Strickler v. State,* 55 Md.App. 688, 466 A.2d 51 (1983).

 The arrest warrant having been issued on December 13, 1979, we compute from that date to commencement of trial, September 9, 1982—a delay of 33 months and 27 days. Even if we compute from April 7, 1981, the date Baltimore City Police first knew of appellant's whereabouts, there is a delay of seventeen months, which is not only of constitutional dimension, but which is also presumptively prejudicial to the accused. *Epps v. State,* 276 Md. 96, 345 A.2d 62 (1975). *See also Strickler, supra.* When the length of the delay is presumptively prejudicial, the burden of going forward on the question of prejudice shifts to the State. *Wilson v. State,* 34 Md.App. 294, 367 A.2d 970, *cert. denied,* 280 Md. 736 (1977).

### 2. *Reason for the Delay*

The appellant and the State share, although not equally, the "blame" for delay.

(i) *Delay by the State*

Because the record does not disclose when the Baltimore City Police *first* became aware of the fact that the appellant was in federal custody, we can only infer such knowledge as of April 7, 1981, the date they attempted to lodge a detainer by mailing the warrant to the U.S. Marshall Service in New York, along with the request that it be used as a detainer. For reasons never explained or argued below, the federal authorities, according to appellant's uncontradicted recitation of what his "case manager" told him, had concluded that Maryland authorities had failed to comply with the procedural requirements for a "formal detainer."

Although the Interstate Agreement on Detainers, Md. Code, Art. 27 § 616A, *et seq.,* does not define the word "detainer," in *State v. Boone,* 40 Md.App. 41, 44, 388 A.2d 150 (1978), we opined that "it is generally recognized that the term refers to a notice directed to prison authorities informing them that charges are pending in another jurisdiction against an inmate." Although the Baltimore City Police Department's "detainer" would seem to pass muster under the *Boone* definition, according to the appellant it was not sufficient under the Agreement to trigger his right to request final disposition of all untried charges, *see* Art. 27, § 616D, but was sufficient to preclude certain privileges available to those who were not so "detained."

■ In any event, a determination of the validity, *vel non,* of the April 7, 1981 "detainer" is not dispositive of the State's obligation to provide the appellant a speedy trial. The mere fact that defendant is incarcerated in another jurisdiction does not relieve the State of its obligation to afford the accused a speedy trial. *State v. Hicks,* 285 Md. 310, 320, 403 A.2d 356 (1979). *See also Smith v. Hooey,* 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). Notwithstanding the seriousness of the charges, a "formal detainer" triggering appellant's rights under the agreement was not lodged until September 29, 1981. Assuming *arguendo* that the federal authorities or the case manager erred in the

initial determination as to alleged insufficiency of the "first" detainer, absent from the record is evidence of any effort by the State to try the subject's outstanding murder indictment. This *apparent* indifference on the part of the State may have delayed appellant's right to prompt disposition (within 180 days of proper notice by the defendant to the appropriate authorities) under the Interstate Agreement on Detainers. *See* Article 27, § 616D.

Although our decision today is not predicated on a violation of that Agreement, we cannot ignore the underlying purpose of the Agreement in analyzing the "reasons for delay." As the Court of Appeals stated in *State v. Barnes,* 273 Md. 195, 205–06, 328 A.2d 737 (1974):

> It has long been recognized that detainers for untried charges—whether interstate or intrastate in nature—may result in 'undue and oppressive incarceration.' Undue delay in the disposition of such detainers has been recognized as minimizing the possibility that a defendant incarcerated might receive a sentence at least partially concurrent with the term he is serving and that under the procedures widely practiced, the duration of his imprisonment may be increased and the conditions under which his confinement must be served greatly worsened because of the pendency of an additional charge against him and the potentiality of additional punishment. Similarly, it has been recognized that a long delay in the trial of the detainer charge may impair the ability of the accused to defend himself since he is often in a prison far removed from the place where the added offense allegedly took place, resulting in an impairment of his ability to keep apprised of the whereabouts of witnesses, and isolates him from the ready availability of the assistance of his counsel. It has even been stated that the pendency of such a detainer constitutes a serious impediment to the prisoner's ability to take maximum advantage of the institutional opportunities for rehabilitation.

The State's lack of effort to bring the appellant to trial belies any serious intent to facilitate the purpose of the

agreement but do indeed indicate a certain indifference to appellant's confinement.

In *Brady v. State,* 291 Md. 261, 269, 434 A.2d 574 (1981), the Court of Appeals in balancing the four factors held the factor most determinative of the issue in that case was "the reason for the delay: prosecutorial indifference." Thus the reason for delay from April 7, 1981 to March 29, 1982 (11 months and 22 days) must be weighed heavily against the State. *Brady, supra.* Obviously, the delay from March 29, 1982 through August 17, 1982 having been caused by appellant's request for postponement is charged to the appellant. On the other hand, the three-week delay from August 17 to September 8, 1982 due to postponement caused by prosecutor's vacation was chargeable to the State.

The *Brady* court in its balancing process allowed no time for reasonable preparation of the case by the prosecution or for the orderly process of the case. *See Epps, infra.* In a pre-*Brady* decision, *Wilson v. State,* 44 Md.App. 1, 17, 408 A.2d 102, *cert. denied,* 286 Md. 755, *cert. denied,* 446 U.S. 921, 100 S.Ct. 1858, 64 L.Ed.2d 275 (1980), although we allowed 180 days for pre-trial preparation and orderly process, we ordered dismissal because we found "7½ months of sheer neglect in addition to 6 months excused more than can be tolerated." The *Brady* court seems to apply greater weight to "prosecutorial indifference" (sometimes therein characterized as the State's neglect) than either the Supreme Court or pre-*Brady* courts applied to "negligence of state officials." For example, Judge Digges in explicating the "Reasons for Delay" observed in *Smith v. State,* 276 Md. 521, 528, 350 A.2d 628 (1976):

> In *Barker,* Mr. Justice Powell, for the Supreme Court, expressed the view that 'different weights should be assigned to different reasons [for delay].' 407 U.S. at 531, 92 S.Ct. at 2192. Initially, he observed that '[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government.' *Id.* He then indicated that prolongation of trial due to the negligence of state officials, understaffing of state offices

or overcrowded courts, while not to be considered neutral, is to be 'weighted less heavily' toward a finding of a violation of the Sixth Amendment right. *Id.; Strunk v. United States,* 412 U.S. 434, 436, 93 S.Ct. 2260, 2262, 37 L.Ed.2d 56 (1973).

*See also Jones v. State,* 279 Md. 1, 6–7, 367 A.2d 1 (1976); *cert. den.,* 431 U.S. 915, 97 S.Ct. 2177, 53 L.Ed.2d 225 (1977).

■ Even if we were to strictly apply the *Wilson* formula by subtracting 6 months (180 days) from the total of 12 months and 14 days attributed solely to the State, there still remains 6 months and 14 days of "sheer neglect."

### (ii). *The Defendant's Delay*

■ We have not overlooked nor shall we condone the longest single period of the delay—that period of time from December 13, 1979 to March 18, 1981, a time span which we must attribute to the appellant.

Before rendering her decision denying appellant's Motion to Dismiss, the trial judge stated: "So I assume a warrant was promptly issued. So I think the record should reflect he absented himself from any ability to be prosecuted for the period December 12, 1979 until March 18, 1981." In her oral opinion, she observed that appellant "became the suspect in December of 1979 and a warrant was issued for him. He escaped the attention of the authorities by his own acts until March of 1981 when he was arrested [in New York] on an unrelated charge...."[3] Appellant's trial counsel made no objection to those remarks. Testifying at the hearing on his Motion to Dismiss, appellant was emphatic about his numerous efforts to request prompt disposition under the interstate agreement, but at no time did he indicate surprise about receiving notice of an outstanding murder warrant. Therefore, it was reasonable for the trial court to infer that appellant's disappearance immediately after the murder and

---

**3.** The record is silent as to appellant's whereabouts from December 12, 1979 to March 8, 1981.

issuance of the warrant was more than mere coincidence. Thus, the court below, in finding that appellant himself delayed his trial, would not allow him to take advantage of a delay for which he was responsible.

It is well settled that "[a]n accused cannot take advantage of a [trial] delay for which he was responsible, whether caused by action or inaction on his part . . . where delay is caused by his absence from the state, by his absconding, escaping, or becoming a fugitive from justice." 21A Am. Jur.2d *Criminal Law* § 861.

In *Cates v. United States,* 379 A.2d 968 (D.C.1977) the District of Columbia Court of Appeals held that appellant was not denied a speedy trial notwithstanding a lapse of fifty-nine months between arrest and trial. Cates and a companion had been arrested within minutes of an attempted robbery of a taxi driver on May 27, 1971. At the time of arrest, he gave his name to the police as Alford L. McNeil. He was arraigned under that name and released on his own recognizance but thereafter failed to appear at the preliminary hearing on the case. On October 5, 1971, a federal grand jury returned an indictment charging Alford L. McNeil with assault with intent to commit robbery and related charges.

Meanwhile, Cates had fled to North Carolina and was arrested and imprisoned there on different charges. There he used the name John Merrick Williams.

In December 1975, District of Columbia authorities located Cates in the North Carolina prison through the use of fingerprints. At his subsequent arraignment he claimed that he was not the person who had been arrested in 1971, however, an additional fingerprint examination revealed that the prints belonged to the same person. Later, when the prosecution sought a court-ordered modification of the indictment to correct appellant's first name, appellant would not acquiesce in this amendment. On April 6, 1976 the government submitted the case to the grand jury for re-indictment and a new indictment was issued on April 6, 1976

in the name of Harold L. Cates, a/k/a Alford McNeil, a/k/a John M. Williams. He was brought to trial on April 30, 1976 and convicted of assault with a dangerous weapon and assault with intent to commit robbery. Cates appealed, claiming *inter alia* that he was denied a speedy trial and that the government was negligent and failed to make good faith efforts to locate him. In affirming the conviction, the court said:

> Even if we were to assume *arguendo* that the government was negligent, in this case appellant's own actions more than counterbalanced the weight to be accorded any presumed inefficiency on the part of the prosecution. Appellant gave a false name when he was arrested; he became a fugitive from the District of Columbia; in order to conceal his true identity from law enforcement officials, he used another name when he was arrested in North Carolina; and, although he was paroled for approximately eleven months in 1973, he made no effort to return to the District to clear up the pending charges. Courts have held that '[i]t is well established that where the defendant's unlawful flight of hiding out is the reason for the delay in his trial, he is held to have waived his right to a speedy trial.' *United States v. Judge*, 425 F.Supp. 499, 502 (D.Mass.1976), *citing United States v. Cartano*, 420 F.2d 362, 364 (1st Cir.), *cert. denied*, 397 U.S. 1054, 90 S.Ct. 1398, 25 L.Ed.2d 671 (1970); *Dickey v. Florida*, 398 U.S. 30, 48, 90 S.Ct. 1564, 1574, 26 L.Ed.2d 26 (1970) (Brennan, J., concurring); 57 A.L.R.2d 318; Speedy Trial Act, 18 U.S.C. § 3161(h)(3) (1975). *See also United States v. Thor*, 512 F.2d 811, 815 (5th Cir.), *cert. denied*, 423 U.S. 1014, 96 S.Ct. 445, 46 L.Ed.2d 384 (1975). Thus, appellant's fugitivity and his use of three names during the period between arrest and trial must be given *considerable weight* in determining the causes for the delay of his trial.

(Emphasis supplied.) *See also U.S. v. Carter*, 603 F.2d 1204 (5th Cir.1979).

Where a two-year delay occurred between defendant's robbery indictment and subsequent trial, but 18 months of the two-year delay were directly attributable to the fact that the defendant had jumped bail and left the state, the Supreme Court of Rhode Island held that the defendant was not denied his constitutional right to a speedy trial. *State v. Newman,* 117 R.I. 354, 367 A.2d 200 (1976).

The "fugitivity" doctrine was approved in principle by this Court in *Isaacs v. State,* 31 Md.App. 604, 614, 358 A.2d 273 *cert. denied,* 278 Md. 724 (1976) where we said:

> Appellant cannot avail himself of *Barker* when it is he by his criminal acts in another state or his willful absence from Maryland which prevented the State from proceeding to trial.

Similarly, Maryland cases involving speedy trial situations agree in principle that a defendant cannot profit from his own wrong in delaying a trial. *See State v. Hicks,* 285 Md. 310, 335, 403 A.2d 356 (1979), *Wilson v. State,* 281 Md. 640, 382 A.2d 1053, *cert. denied,* 439 U.S. 839, 99 S.Ct. 126, 58 L.Ed.2d 136 (1978), and *State v. Green,* 54 Md.App. 260, 458 A.2d 487 (1983).

3. *Assertion of the Right*

 Although defendant's failure to demand a speedy trial may no longer be considered a waiver of such right but only one factor in determining whether the right has been denied, a defendant's failure to assert his right is entitled to strong evidentiary weight and makes it difficult for a defendant to prove that he was denied a speedy trial. *Barker v. Wingo, supra,* 407 U.S. at 531–32, 92 S.Ct. at 2192–93. It is noteworthy that although appellant's initial attempts (on and after April 9, 1981) to demand a speedy trial pursuant to the agreement were thwarted by the State's alleged failure to lodge a legally sufficient detainer, during his fugitivity he did not seek a speedy trial. He did, however, request speedy disposition on October 21, 1981 promptly after the State filed the "formal detainer." *See Gee, supra,* at 554, 459 A.2d 608. Although this assertion was entitled to strong eviden-

tiary weight in determining whether he was being deprived of the right to speedy trial, *see Epps, supra,* at 118, 345 A.2d 62, appellant's failure to assert his right until after his arrest in New York must be balanced against him. *Cates, supra,* at 972.

### 4. *Prejudice*

In *Barker, supra,* the Supreme Court, in discussing this factor, said:

A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

*Id.* at 532, 92 S.Ct. at 2193. *See also Epps, supra,* at 106, 345 A.2d 62.

 Although appellant suffered actual prejudice attributable to part of the State's initial 11 month 22 day delay in that (1) while incarcerated transfer to a lower-security area was revoked because of the alleged but faulty Maryland detainer, and (2) his scheduled transfer to a "half-way house" would not go through because of the Maryland charges, he did not suffer that type of prejudice identified by the Supreme Court in *Barker* to be the most serious: impairment of defense. If any witness had died or disappeared between December 13, 1979 and March 18, 1981, the appellant would have had no one but himself to blame. Witnesses obviously would have better recall several months

after an incident than 16 or more months thereafter. Again, any such memory loss would clearly have been attributable to the appellant.

## The Balancing

■ The *length of the delay* was substantial, yet more than 50% was attributable to the appellant.[4] Were this merely a matter to be resolved by simple arithmetic, then our task would be simple and the appellant would serve his time without further reflection or evaluation. But the "four factor test" and not a mathematical formula *must* be applied. *Erbe v. State,* 276 Md. 541, 350 A.2d 640 (1976). As we noted earlier, prosecutorial indifference to appellant's confinement must be weighted heavily against the State. *Brady, supra.* Whether we count, in the balance, the entire period of 12 months and 14 days or apply the *Wilson* formula leaving "only" 6 months and 14 days of "sheer neglect," we must balance the effect of the *considerable* weight, *Cates, supra,* to be attributed to appellant's purposeful delay.

In *Barker, supra,* Justice Powell said, explicating the "reason for delay" factor: "different weights should be assigned to different reasons. *A deliberate attempt to delay the trial* in order to hamper the defense should be weighed heavily against the government." *Id.* 407 U.S. at 531, 92 S.Ct. at 2192. *We see no reason in logic or law why "a deliberate attempt to delay the trial" should not be weighed as heavily against the defendant (appellant).*

The Supreme Court in *Barker* said as much, but perhaps in other words:

---

4. The period of nearly 16 months (12/13/79 to 4/7/81) plus more than $4^{1}/_{2}$ months (3/29/82 to 8/17/82) adds up to $20^{1}/_{2}$ months out of a total 33 month period. In *Jones v. State,* 279 Md. 1, 367 A.2d 1, *cert. denied,* 431 U.S. 915, 97 S.Ct. 2177, 53 L.Ed.2d 225 (1977), the Court of Appeals through the late Judge Dudley Digges said:

[D]elays must be examined in the context in which they arise and therefore a lengthy uninterrupted period chargeable to one side will generally be of greater consequence than an identical number of days accumulating in a piecemeal fashion over a long span of time.

But barring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial.

*Id.* at 536, 92 S.Ct. at 2195.

The record is clear in the case *sub judice* that during the period of at least 12/12/79 to 3/17/81 the appellant did not want a speedy trial. That period was the longest single period of delay and has more significance than shorter periods. *Jones, supra,* at 7, 367 A.2d 1. As noted earlier, his failure to assert his right to a speedy trial prior to his captivity is balanced against him.

Sensitively weighing the conduct of both the prosecution and the defense on the scales of justice, we hold that any prejudice caused to the appellant by the State is far outweighed by his own efforts to avoid a speedy trial. Appellant was not denied his right to a speedy trial.

Although the negligent conduct on the part of the State by its apparent indifference to appellant's incarceration ought not be condoned, neither should it serve as a "checkmate" terminating prosecution. The Supreme Court has stated that

[a] criminal prosecution is more than a game in which the Government may be checkmated and the game lost merely because its officers have not played according to rule.

*United States v. Ceccolini,* 435 U.S. 268, 279, 98 S.Ct. 1054, 1061, 55 L.Ed.2d 268 (1978) (*quoting with approval, McGuire v. United States,* 273 U.S. 95, 99, 47 S.Ct. 259, 260, 71 L.Ed. 556 (1927)).

## II. *The Interstate Agreement on Detainers*

Appellant asserts that he is entitled to a dismissal of all charges because the State did not comply with the Interstate Agreement on Detainers (IAD), Md.Ann.Code, Art. 27, § 616D. The IAD sets out detailed procedures whereby a prisoner incarcerated in one state may bring

about the disposition of untried charges in another state. To this end, § 616D(a) provides, in pertinent part:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, *he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: ...*

(Emphasis added.) This subsection is supplemented by § 616Q which states:

As to any request by a person imprisoned in another party state for trial in this State, written notice shall not be deemed to have been caused to be delivered to the prosecuting officer and the appropriate court of this State in accordance with § 616D(a), ... until such notice or notification is actually received by the appropriate court and by the appropriate State's attorney of this State, his deputy, an assistant, or any other person empowered to receive mail on behalf of the State's attorney.

When these two sections are read together, they exemplify the legislature's intent that the 180 day period does not commence until the prisoner's notice and request are "actually received by the appropriate prosecuting officer and court in this State." *Davidson v. State,* 18 Md.App. 61, 67, 305 A.2d 474, *cert. denied,* 269 Md. 757 (1973).

■■■ Maryland authorities filed a "formal detainer" on September 13, 1981 in order to bring appellant to Maryland to stand trial. On October 2, 1981, appellant timely requested a speedy trial in accordance with the IAD. Appellant was thereafter transferred to Maryland and his case was

called for trial on March 29, 1982. A period of 177 days had elapsed since appellant's request for trial. Thus, Maryland fully complied with the IAD by bringing appellant to trial within 180 days of his request.

Appellant, conceding factual compliance with the IAD, urges us to find that the State's "bungled" attempt to file the first detainer mandates dismissal of his charges. The record does not assist us in determining the validity *vel non* of this first detainer. Instead, we are left only with appellant's uncontradicted and unsupported testimony that his case manager, a federal prison official in New York, repeatedly informed him that the first detainer was defective. We note that appellant's testimony at the hearing on the Motion to Dismiss reflected an individual with a total grasp of the workings of the IAD. Therefore, it is interesting that someone possessing this knowledge would sit back for five months without attempting to contact Maryland officials to inform them that a second detainer was necessary.

█ In any event, dismissal of appellant's charges would not be the appropriate sanction even if we assume that the first detainer were defective. We denied this precise remedy in *Bey v. State,* 36 Md.App. 529, 373 A.2d 1291 (1977). In that case the State had failed to bring the defendant to trial within the strictures set out in Maryland's Intrastate Detainer Act (IDA), Md.Ann.Code, Art. 27, § 616S[5] due to a clerical error by a prison official. We held that the indictment could not be dismissed.

---

5. The IAD and IDA are
 in *pari materia* and should be construed together so that they will harmonize with each other and be consistent with their general object and scope.
 Both agreements are similar in origin and objective in that they are remedial in nature, designed to correct existing law, to redress existing grievances and to introduce regulations conducive to the public good; as such they are to be liberally construed in order to advance the remedy and obviate the mischief.
 *State v. Barnes,* 273 Md. 195, 208, 328 A.2d 737 (1974).

[T]he court shall lose jurisdiction and the indictment shall have no further force or effect if the prisoner is not brought to trial within the time limitation, which commences after his request and the warden's statement have been delivered to the appropriate State's Attorney and court. *The court, however, does not lose jurisdiction and the indictment still has force and effect and shall not be dismissed for any other failure to comply with the provision, not only on the part of the prisoner but also on the part of the authorities.*

36 Md.App. at 532, 373 A.2d 1291 (emphasis added). We recognize that other jurisdictions have held that errors by officials shall not result in a prisoner's denial of a relief under the IAD. Annot., 98 A.L.R.3d 160, 198. "Maryland cases dictate our holding; there is no need for us to consider out of state cases under the [IAD]." *Id.* at 533, 373 A.2d 1291. Maryland law requires that defendant be brought to trial within 180 days

after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition. . . .

Md.Code Ann. Art. 27, § 616D(a). That law was complied with in this case.

### III. *"Single Eyewitness" Instruction*

The State's principal witnesses at appellant's trial were Dorlina Bryant, appellant's ex-girlfriend and the mother of their son, Regina Bryant, Dorlina's sister and the girlfriend of the victim, Vernon Brooks, and Palmeda Jackson, a disinterested witness.

Dorlina testified that she and appellant had had a serious argument earlier in that evening. Since she had permitted appellant to take the child to appellant's grandmother's house, Dorlina was concerned she would not be able to retrieve her son. With the assistance of the police, Dorlina had her child returned to her.

Dorlina then decided to call the police again. Vernon Brooks accompanied her to a public phone booth. According to Dorlina, appellant approached her with a knife and attempted to stab her. She eluded him and ran to her nearby apartment to find her own weapon. As she was about to return, she heard Regina screaming that appellant had stabbed Brooks. When she returned to the street, she saw Brooks lying on the ground, bleeding from a stab wound to the chest. Brooks succumbed to this injury.

Regina testified that she had not screamed that appellant had stabbed Brooks, but that she had seen appellant strike Brooks with a shiny object.

Testifying for the defense, Mary Johnson stated she witnessed a girl and a man arguing over a child. She related that when the man struck the girl, she stabbed him. The defense theorized that Dorlina stabbed Brooks when he sided with appellant over the dispute.

■ During the course of her instructions on credibility, the court told the jury, "I advise you that the testimony of a single eyewitness, if believed beyond a reasonable doubt, is sufficient to convict." Defense counsel excepted and appellant contends here that "the instruction improperly highlighted prosecution evidence which was especially damaging to the defense." We disagree.

■ The trial judge gave full and fair instructions covering the credibility of witnesses, the State's burden of proof and reasonable doubt. Contrary to well-established Maryland law, appellant myopically focuses on the "one-eyewitness" instruction. Instructions ought to be viewed as a whole and in doing so, attention should not be focused on a particular portion lifted out of context, but rather their adequacy must be determined by viewing them as an entirety. *State v. Garland,* 278 Md. 212, 220, 362 A.2d 638 (1976).

### IV. *The Mandatory Sentence*

Appellant was sentenced to a mandatory period of incarceration without parole pursuant to Md.Ann.Code, Art. 27,

§ 643B(c). That section's application requires that the defendant has been

> convicted on two separate occasions of a crime of violence where the convictions do not arise from a single incident, and . . . has served at least one term of confinement . . . as a result of a crime of violence.

Subsection (a) sets out the specific offenses which constitute a "crime of violence."

Among appellant's prior offenses was a conviction of bank robbery in the District of Columbia under 18 U.S.C. § 2113(a). That section sets out two very different definitions of bank robbery.

> (a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, or any savings and loan association; or
>
> Whoever enters or attempts to enter any bank, or any savings and loan association, or any building used in whole or in part as a bank, or as a savings and loan association, with intent to commit in such bank, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank or such savings and loan association and in violation of any statute of the United States, or any larceny—
>
> Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

Thus, the first definition requires a showing of "force and violence, or by intimidation," while the second merely requires that a person enter a bank with the intent to commit "any felony."

██ The State provided no transcript or any other evidence to demonstrate the underlying facts of appellant's bank robbery conviction. Therefore, the State did not prove that the District of Columbia offense qualified as a crime of violence under § 643B(a). Consequently, appellant's manda-

**374**

tory sentence under § 643B(c) must be vacated. *Temoney v. State,* 290 Md. 251, 429 A.2d 1018 (1981); *Mitchell v. State,* 56 Md.App. 162, 467 A.2d 522 (1983).

JUDGMENTS AFFIRMED; MANDATORY SENTENCE WITHOUT PAROLE VACATED; CASE REMANDED FOR IMPOSITION OF PROPER SENTENCE. COSTS TO BE DIVIDED BETWEEN THE PARTIES.