# KENNETH MAURICE WILSON v. STATE OF MARYLAND

[No. 766 (On Remand), September Term, 1977.]

*Decided November 6, 1979.*

The cause was argued before GILBERT, C. J., and LOWE and WEANT, JJ.

*Thomas J. Saunders, Assistant Public Defender,* with whom were *Alan H. Murrell, Public Defender,* and *Mark Colvin, Assistant Public Defender,* on the brief, for appellant.

*Kathleen M. Sweeney, Assistant Attorney General,* with whom were *Francis Bill Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City, Sheldon Mazelis, Howard Grossfeld* and *John Denholm, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

On February 11, 1975, Kenneth Maurice Wilson, appellant, was tried and convicted in the Criminal Court of Baltimore of the rape and robbery of Lulu Mae Vicks. On February 24, 1975 he was tried and convicted of having carnal knowledge of and committing perverted practices on, Jo Ann Murcer. Both cases were appealed to this Court where the judgments were affirmed by per curiam decisions. Appellant then filed a post conviction petition alleging eleven errors on which to base reversals. The post conviction judge granted a belated appeal citing poor representation of appellant's direct appeal. This Court dismissed the appeal sua sponte. "The legislative grant of jurisdictional authority to hear post conviction complaints did not coincidentally vest the trial court with the power, not formerly conferred, to examine appellate operations." *Wilson v. State,* 39 Md. App. 113, 118 (1978). The Court of Appeals reversed and remanded for our consideration of the merits. *Wilson v. State,* 284 Md. 664 (1979). Appellant's main contention involves the denial of his speedy trial right in both the Vicks and Murcer cases. The

following is a composite of appellant's entanglements with the judicial system in those two cases which we will subsequently dissect for analytical purposes.

On August 15, 1973 appellant was arrested for having carnal knowledge of and committing perverted practices on Jo Ann Murcer. The court released him on his own recognizance the next day. Appellant was arrested again 3-½ months later on November 30, 1973, for the rape and robbery of Lulu Mae Vicks. He was charged and released on bail. Appellant was once more incarcerated a month later on New Year's Eve, 1973, on burglary charges.

The State finally arraigned appellant in both the Murcer and Vicks cases on March 20, 1974, 7 months, 5 days after the Murcer arrest and 3 months, 20 days after the Vicks arrest. At that time the court referred him to Clifton T. Perkins State Hospital for evaluation in response to his pleas of not guilty by reason of insanity in both cases. As soon as the Perkins' medical report was filed on May 14, 1974, the court set the date for prosecution of all cases pending against appellant [1] as June 11, 1974. The cases were postponed due to the illness of defense counsel and were reset for August 8, 1974. Soon after the first trial postponement, appellant wrote a letter to Judge Anselm Sodaro expressing anxiety about the delays, and requesting a speedy trial.

On August 8, 1974, the second scheduled trial date, Judge Sodaro elected to proceed with one of the cases other than that of Murcer or Vicks. At that trial, appellant challenged the admissibility of identification testimony which the State had proferred as evidence. Judge Sodaro asked counsel for legal memoranda on that point of law and scheduled a new trial date for November 6, 1974. The third scheduled trial date for the cases before us was again postponed and reset for November 13, 1974 when Judge Sodaro declared a mistrial in the pending case. On November 13, 1974 judge and jury were unavailable which necessitated a fifth rescheduling of the Murcer and Vicks cases.

---

1. Appellant had also been arrested for rape on the morning of December 31, 1973 and as indicated for burglary on that evening. He was also arrested and charged with another rape on a subsequent date.

**4**

Judge Dulany Foster, then presiding, elected to hear the Vicks case on January 9, 1975. That case was delayed once more due to unavailability of key State witnesses and the illness of the victim. Shortly thereafter appellant moved pro se to dismiss the indictments against him for denial of a speedy trial. The denial of that motion as applied to the Murcer and the Vicks cases are the decisions we are now reviewing.

Trial began on February 11, 1975 in the Vicks case (with Judge Baylor presiding) which concluded in a conviction. The Murcer case began on February 24, 1975. The same judge presided which was also an issue contested as prejudicial, denied by the court and subject to appeal here.

Appellant contends that he was denied speedy trials under the Sixth Amendment of the United States Constitution as applied to the states via the Fourteenth Amendment. Garnered from the massive volume of case law on the speedy trial issues are certain pertinent fundamental principles. As this Court explained in *State v. Lawless,* 13 Md. App. 220, 227 (1971), the right to a speedy trial is a relative one which depends on the facts and circumstances of the particular case. The Supreme Court has given guidance in evaluating those facts and circumstances on a case-by-case basis.

> "The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed.
>
> A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo,* 407 U.S. 514, 530 (1972) (footnotes omitted).

One of the "circumstances" of this case is that we are reviewing the judgment of a trial court made five years ago

in light of that half-of-a-decade's changed thinking on the length of time it should take to bring an accused to trial. In *Barker v. Wingo* five and one-half years to trial under the circumstances was not too long. If that were to occur in Maryland today, any time beyond four months would have to be justified as an extraordinary circumstance to avert dismissal.

The *Barker v. Wingo* evaluating criteria were presumably those which the trial court in this case was bound to apply in determining whether appellant had been denied a speedy trial, but there was also a statutory guide by the Legislature indicating its view of how long is too long for the State to bring an accused to trial. Md. Code, Art. 27, § 591. Significantly, the statutory guideline appears addressed more to recognition of an outside limit for trial preparation allowed the State or what is referred to as a reasonable time for "orderly procedure", see *Epps v. State,* 276 Md. 96, 112 (1975); see also *State v. Lawless, supra* at 230, in getting the case to trial. It provided six months for that purpose but did not start the time running until appellant was arraigned or represented.

> "(a) Within two weeks after the arraignment of a person accused of a criminal offense, or within two weeks after the filing of an appearance of counsel or the appointment of counsel for an accused in any criminal matter, whichever shall occur first, a judge or other designated official of the Circuit Court or the Criminal Court of Baltimore City in which the matter is pending, shall set a date for the trial of the case, which date shall be not later than six months from the date of the arraignment of the person accused or the appearance or the appointment of counsel for the accused whichever occurs first. The date established for the trial of the matter shall not be postponed except for extraordinary cause shown by the moving party and only with the permission of the administrative judge of the court where the matter is pending.
> (b) The judges of the Court of Appeals of

Maryland are authorized to establish additional rules of practice and procedure for the implementation of this section in the Criminal Court of Baltimore City and in the various circuit courts throughout the State of Maryland." Md. Code, Art. 27, § 591.

Despite its language we held that section to be directory not mandatory, *Young v. State,* 15 Md. App. 707 (1972), and the Court of Appeals adopted our view in *Young v. State,* 266 Md. 438 (1972). The plethora of appellate speedy trial opinions following that holding do not appear to have acknowledged the statute even as a benchmark, considering the proportionately few references found to it in the many published cases.

As concern heightened for speedy trials, the Court of Appeals found authority in subsection (b) of § 591 to restrict further the time within which a case should be brought to trial. It adopted Md. Rule 746 to be effective July 1, 1977, which reflected not only the Legislature's policy but emulated its language. However, the Court shortened the time allowed in which to set a case for trial and the time within which it had to be tried.

"a. *General Provision.*

Within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 723 (Appearance — Provision for or Waiver of Counsel), a trial date shall be set which shall be not later than 120 days after the appearance or waiver of counsel or after the appearance of defendant before the court pursuant to Rule 723 (Appearance — Provision for or Waiver of Counsel).

b. *Change of Trial Date.*

Upon motion of a party made in writing or in open court and for extraordinary cause shown, the county administrative judge or a judge designated by him may grant a change of trial date." Md. Rule 746.

Two years later, on June 25, 1979, the Court announced that it had not only been wrong in adopting our view in *Young*

(that the statute was directory only), but that both statute and rule were mandatory, and dismissal was the sanction for violation. *State v. Hicks,* 285 Md. 310. Although the new interpretation of the statute and rule and the dismissal sanction is to be applied prospectively only, it is apparent that the Legislature, even pre-*Hicks,* considered an orderly procedure for trial preparation to be six months and the Court of Appeals since July 1, 1977, less than that by two months. While the rule (and presumably the statute) are considered by the Court of Appeals to be nonconstitutional procedural rules, see *Hicks, supra,* it is apparent from the similarity of purpose and sanction adopted to enforce them, that when considering the length of delay in bringing an accused to trial in the constitutional speedy trial context, the time factors in these nonconstitutional procedural rules should not have been — and cannot now — be ignored.

To say that what we now know and declare an appropriate time limit of orderly judicial procedure should not be applied to a case presently considered (because the system had not finally determined it five years ago) strains reasoning beyond credulity. Therefore, although we will use the traditional balancing act of *Barker v. Wingo,* in the constitutional sense, we will not lose sight of the born-again vision of orderly procedure gospel evangelized by *Hicks.* In doing so we cannot help but note that neither statute nor rule appears to address a delay which may occur between arrest and arraignment, but until told otherwise, it will be considered as part of the whole and upon the same scales.

### The Analysis

#### — length of the delay —

The duration of the delay plays a hybrid role in our analysis. It is the mechanism which triggers the analysis, as well as a factor to be considered in the balancing process. See *State v. Wilson,* 35 Md. App. 111 (1977), *aff'd,* 281 Md. 640 (1978).

The period comprising the date of appellant's arrest to the start of judicial proceedings is the crucial delay for this factor.

8

*United States v. Marion,* 404 U.S. 307 (1971). This delay equaled 14-½ months in Vicks and 18 months in Murcer. Appellee concedes that the delay in both cases reached a "constitutional dimension" and triggered the four factor balancing analysis. The concession comes with good grace but is hardly without persuasive precedent. See *Epps v. State, supra,* (12 month and 14 day delay held to be of constitutional dimension). See also *State v. Statchuk,* 38 Md. App. 175 (1977) (10 month and 21 day delay also held to be of constitutional dimension). Although many of the periods of delay overlap and will be jointly discussed, we will set forth a separate chronology for each.

— the Murcer case —

| | |
|---|---|
| August 15, 1973 | Appellant arrested. |
| August 16, 1973 | Recognizance taken (out on own recognizance). |
| September 24, 1973 | Criminal information filed. |
| October 9, 1973 | Information served and receipt filed. |
| October 9, 1973 | Appearance of defense counsel filed. |
| December 14, 1973 | Order to rescind prior pre-trial release order. J. Sklar. |
| February 13, 1974 | Insanity Plea filed. |
| March 20, 1974 | Arraignment. Referred by Court Order to Clifton Perkins State Hospital for evaluation. J. Sodaro. |
| May 14, 1974 | Perkins' Medical Report dated May 10, 1974. Filed by clerk May 14, 1974. |
| June 11, 1974 | Trial postponed. Foster, C.J. (Illness of defense counsel). |
| June 21, 1974 | Letter written by appellant to Judge Sodaro asking for bail reduction and speedy trial. |
| August 8, 1974 | Series of cases against appellant came before J. Sodaro. State elected to begin companion case. Murcer case postponed. Court continued case called pending memoranda from counsel on a |

|                    | motion raised. Murcer case to be reset with continued case. Sodaro, J. |
|--------------------|---------------------------|
| November 6, 1974   | Sodaro declared mistrial in companion case. Reset remaining cases for Nov. 13, 1974. |
| November 13, 1974  | Postponed. No judge or jury available to hear cases. |
| January 9, 1975    | Vicks case begun. Murcer case postponed. State witness for Vicks case unavailable and victim ill. Rescheduled for February 11, 1975. Foster, C.J. |
| January 30, 1975   | Pro se motion to Dismiss Indictments. |
| February 11, 1975  | Vicks trial. Completed February 19, 1975. |
| February 24, 1975  | Murcer trial begun. Baylor, J. |

— the Vicks case —

| November 30, 1973 | Appellant arrested. |
|-------------------|---------------------|
| December 14, 1973 | Recognizance taken. Arrest Warrant and Recognizance Application stamped: Held for action of Grand Jury 1/18. |
| March 6, 1974     | Presentment filed. |
| March 19, 1974    | Indictment filed. |
| March 20, 1974    | Arraignment. Plea of Not Guilty by Reason of Insanity. Referred to Clifton Perkins State Hospital for evaluation. |
| March 21, 1974    | Appearance of defense counsel filed. |
| May 14, 1974      | Perkins' Medical Report dated May 10, 1974. Filed by clerk May 14, 1974. |
| June 11, 1974     | Trial postponed. Foster, C.J. (Illness of defense counsel.) Trial reset for August 8. |
| June 21, 1974     | Letter written by appellant to Judge Sodaro asking for bail reduction and speedy trial. Order of Court setting bail. |
| August 8, 1974    | Series of cases against appellant came before J. Sodaro. State elected to begin |

|  | a companion case. Court continued that case pending memoranda from counsel pertinent to a motion raised. Trial later reset for Nov. 6, 1974. |
| --- | --- |
| November 6, 1974 | J. Sodaro declared mistrial in companion case (due to length of delay. Defense counsel took two months to supply requested memorandum). Reset remaining cases against appellant for November 13, 1974. |
| November 13, 1974 | Postponed. No judge or jury available to hear cases. Munger, J. Rescheduled for January 9, 1975. |
| January 9, 1975 | Postponed. State witness for Vicks' case unavailable and victim ill. Rescheduled for February 11, 1975. Foster, C.J. |
| January 30, 1975 | Pro se motion to dismiss indictments. |
| February 11, 1975 | Trial. J. Baylor. |

— reasons for delay —

The only delay which is of concern here is that which is chargeable to the State. An examination of the reasons for delay becomes a two part inquiry: Was the delay chargeable to the State; and, if so, for purposes of its effect, what was the motivation on the part of the State. *Barker v. Wingo, supra,* makes it clear that different weights should be assigned depending upon the State's motivation. Inaction, although affirmatively delaying the trial, but for good and valid cause, should place little weight against the State; however, if the motivation is purposeful or oppressive, the State must bear great weight, almost decisive, with less regard for length of delay than for the State's conduct. Delay caused by the State's inaction or negligence falls somewhere in between, see *State v. Lawless,* 13 Md. App. at 238-239, and increases in weight in direct proportion to its length. It must be noted that delay caused by the reasonable preparation and orderly process of the case for some undetermined period will

not be weighed against the State, see *Epps v. State, supra* and *State v. Lawless, supra.*

(arrests to arraignments)

The delay from arrest to arraignment in both cases exceeds the bounds of our understanding. This period must be weighed in light of the relative noncomplexity as charged against the State's allowable period for preparation and orderly processing.

However, the record does not indicate that the prearraignment delays exceeding 7 months in Murcer and 3 months in Vicks were intentional or purposeful. In the absence of indication to the contrary (by either party), we will assume the reasons behind these delays were due to negligent inaction.

Score against the State in months and days:
Murcer — 7 months 5 days
Vicks — 3 months 20 days

(From insanity pleas at arraignment (March 20, 1974) to first assigned trial date (June 11, 1974).)

This delay — almost 3 months — resulted from appellant's entry of pleas of not guilty by reason of insanity in both cases. The insanity defense necessitated a psychiatric evaluation which took 2 months to complete. This is not part of an ordinary trial preparation and was initiated for appellant's benefit. It can hardly be weighed against the State. Appellant's reliance on *State v. Hiken,* 43 Md. App. 259 (1979), is misplaced. Although this Court held that appellants should not be penalized for delays caused by technical defenses, we did not hold that the State should bear the brunt. The month delay between filing of the report and the scheduling of a trial date is also reasonable. The system is not expected to respond to such defense oriented deferrals with immediacy, rather only expeditiously.

There is no score against the State in this period.

(postponed trial date (June 11, 1974) to second assigned trial date (August 8, 1974).)

The postponement from June 11 to August 8 was due to the illness of the defense counsel. This must be classified as a neutral delay. See *Epps, supra* at 111. Because the State was ready and willing to try the case on June 11, but for defense counsel, the delay that occurred after June 11 must be, if not the responsibility of the defendant, certainly not chargeable to the State, and a 2 month delay in rescheduling is not unwarranted.

Defendant did not score against the State in this period either.

(second postponed trial date to mistrial and fourth assigned trial date.)

The second assigned trial date was postponed when Judge Sodaro continued a pending case until November 6, 1974. Subsequently, a mistrial was declared and a fourth trial date, November 13, 1974, was assigned. This delay of over 3 months must be charged to the State. Whatever the reasons given for continuance of the case being tried, both the Vicks and the Murcer cases could have been tried regardless. That they were not, was such inaction on the part of the State which we deem less than assertive, if not indeed dilatory. The State must shoulder this responsibility.

Score against the State this period:
Murcer—3 months 0 days
Vicks—3 months 0 days

(fourth assigned trial date (November 13, 1974) to fifth assigned trial date (January 9, 1975).)

On November 13, 1974 the cases were not reached because no judge or jury was available.[2] Trial was reset for January 9, 1975. This is also chargeable to the State. *Epps v. State,* 276 Md. at 112-113.

---

2. As pointed out by the concurring opinion in Barker v. Wingo, 407 U.S. 514, 538 (1972),

"... unreasonable delay in run-of-the-mill criminal cases cannot be justified by simply asserting that the public resources provided by the State's criminal-justice system are limited and that each case must await its turn."

Score against the State this period:
Murcer—1 month 28 days
Vicks—1 month 28 days

(fifth assigned date (January 9, 1975) to trial (February 11, 1975).) [3]

On January 9, 1975, the Vicks case was scheduled but postponed due to unavailability of a State's witness and the victim's illness. While this delay may weigh neutrally in the Vicks case, the State must bear responsibility for delay in the Murcer case which should have been scheduled in the interim period. This inaction must be weighed against the State,

and will be scored against the State:
Murcer—1 month 0 days
Vicks—0 month 0 days

(summary.)

The State's negligence and/or inaction caused most of the delays in both cases. In the Vicks case delays attributable to the State equaled almost 8 months and 20 days, of which 5 months followed arraignment. In the Murcer case the delays attributable to the State added to almost 13 months and 15 days, of which 6-½ months followed arraignment.

— assertion of the right —

Appellant asserted his desire for a speedy adjudication of all the charges against him as early as the middle of June, 1974. The record also shows that on January 30, 1975, appellant filed a motion to dismiss for lack of a speedy trial. Appellant's assertion is by no means dispositive but it is a qualitative factor to be considered in the four factor balancing process that inures to appellant's benefit.

— prejudice —

In *Barker v. Wingo, supra,* the Court identified three

---

3. The Vicks case was tried February 11, 1975. Murcer was tried February 24, 1975. Common sense indicates that Wilson could only be available for one at a time and the minimal period between the two is justifiable.

interests of defendants' which the speedy trial right was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. When delay is of constitutional dimension, as found here, prejudice although rebuttable, is presumed. 407 U.S. at 530. See also *State v. Wilson,* 35 Md. App. at 124.

## (1)

Appellant in the Vicks case was released on his own recognizance. In the Murcer case appellant was released on bail. His subsequent pretrial confinement resulted from his arrest upon another unrelated charge. No oppressive pretrial incarceration as to the subject offenses has been shown.

## (2)

The record discloses that appellant was concerned and anxious about the lengthy pretrial delays in the subject cases. Part of the concern was due to confinement in jail which was not occasioned by the subject charges but by his arrest upon other offenses.

## (3)

There is no evidence whatsoever that the defense of appellant was in any way impaired by the delay in bringing the Murcer case to trial. However, in the Vicks case the delay caused the loss of an alibi witness (the stepfather of appellant's girlfriend) due to loss of memory. While prejudicial, appellant's defense impairment was minimal because that witness' testimony as proffered would have been at most nonconclusive and cumulative.

The prejudice caused by the delay was not extraordinary prejudice to the accused and tips the scales but little in either case. However, since prejudice must be presumed in every case and the State has failed to rebut such a presumption, the scale is tipped by this factor in appellant's favor.

— balancing —

The mechanism used in the final weighing is like the old English auncel weight, a crude device at best, not much more sophisticated than the butcher's practice of holding an unknown quantity of meat in one hand to be balanced against a known weight in the other. If the two were not too far out of proportion a sale was consummated, but the butcher also mentally considered the quality of the product while physically weighing the quantity.

That seems to be the message from the Supreme Court in *Barker v. Wingo, supra.* Once the physical weight is in balance, and if not compellingly disproportionate, the quality of the product becomes decisive. The five year length of delay in that case attested to an overwhelming physical bulk, but even with that apparent disproportion, the Court considered the quality of the product and decided that Barker

> "was not deprived of his due process right to a speedy trial." *Id.* at 536.

Two "counterbalancing factors" outweighed the extended time deficiency in that case.

> "The first is that prejudice was minimal,"

but

> "[m]ore important [was] . . . the fact that Barker did not want a speedy trial." *Id.* at 534.

In the case at bar, the State cannot rely upon the "more important" counterbalance in the absence of any "suggestion in the record" that appellant hoped for an advantage from a delay. *Id.* at 535. To the contrary, he personally asserted his intention and desire to avoid delay.

The State can rely on the "minimal" prejudice however, which was for the most part presumptive. The factors constituting presumptive prejudice, *i.e.,* anxiety and concern, are such as proportionately increase with the length of delay. The effect of the anxiety factor on presumptive prejudice is further diluted when during the same period of time, anxiety

to be tried is spread among a number of cases. The concern is dispersed among five rather than concentrated upon one. The substantive prejudicial quality consideration here adds little to the quantitative weight established by the length of delay in these cases.

— the scale —

Within the overall periods chargeable to the State, there is some period of time designated necessarily for "orderly procedure". If the trial is conducted within that "orderly procedure" period, in an ordinary case, the State will be presumed to have provided a speedy trial, without further justification.

> "For 'speedy trial' purposes the delay involved is reckoned only in connection with 'the passage of time beyond that which is obviously within the requirements of orderly procedure.' " *Epps v. State,* 276 Md. at 110.

The maximum allowed for that unaccountable time has until *Hicks, supra,* been undefined, but in light of *Hicks,* as we have indicated, it is now the one hundred and twenty days set forth in Md. Rule 746.

At the time of this case, however, there was no Md. Rule 746; however, Art. 27, § 591 was in the same form as it presently exists, the only difference being we did not know then that it was mandatory. It would seem that we had a statutory guide during that period providing that the State should have been permitted 180 days practically unaccounted for. With that as a measure, we look to the cases we review.

In Murcer the total delay chargeable to the State is 13 months, 15 days, less 6 months excused by statute, leaving 7-½ months absolutely unjustified and unexcused. Less than 2 months of this preceded appointment of counsel but 7 months elapsed before arraignment. *Barker v. Wingo, supra* at 534, indicates that even to provide an advantage to the State "[p]erhaps some delay would have been permissible under ordinary circumstances," from which it necessarily

follows that "some" neglectful delay would be permissible. But we find 7-½ months of sheer neglect in addition to 6 months excused more than can be tolerated.

In the Vicks case the neglected time is far less. The total chargeable delay there is 8 months, 20 days, and that accumulated in piecemeal fashion which dictates we give it lesser weight. *Jones v. State,* 279 Md. 1 (1976). Subtracting the 6 months then statutorily recognized for "orderly procedure", the delay charged to neglect is 2-½ months.[4] During that period the anxiety aspect of the presumptive prejudice was lessened by its cumulative nature since appellant was already anxiously awaiting trial for Murcer when he was arrested for Vicks. The Vicks' anxiety was further obscured by his subsequent arrests on New Year's Eve of 1973.

We also note that a 3 month delay, which we charged against the State, was pending the outcome of another of appellant's trials commenced but continued in recess. Acknowledging that it did not *justify* delaying commencement of this case, we think, as did the Supreme Court in *Barker, supra,* for similar reasons, that "some delay would have been permissible". This is especially true since the resumption of the trial awaited defense counsel's memorandum for 2 of the 3 months. While the State *could* have begun both Murcer and Vicks in the interim, the recommencing of the pending case was anticipated momentarily like the falling of a "second shoe". The weight of that 3 month period (which exceeds the chargeable delay of 2-½ months) is negligible at best. It is certainly not sufficient to invoke the extreme sanction of dismissal. "[B]arring extraordinary circumstances, we would be reluctant indeed to rule" that the "unsatisfactorily severe remedy of dismissal of the indictment" would permit a felon who is "guilty of a serious crime [to] go free . . . .", *Barker v. Wingo, supra* at 522 and see *id.* at 536, because one of

---

4. In the Vicks case counsel appeared one day after arraignment which was 3-½ months after arrest. While the statutory period for a trial to be concluded begins at the first of counsel's appearance or arraignment, we do not believe the Legislature intended that the 180 day permissible period be on a "use it or lose it" basis between the prescribed times.

18

several trials was delayed 2-½ months beyond a justifiable limit.

## II

Because of our dismissal of the Murcer case, the second question,

"Did the trial judge err in refusing to disqualify himself from presiding at the trial of the Murcer case?"

has no further legal significance.

*Judgments in Indictment Nos. 57400384 and 57400386 affirmed.*
*Judgments in Indictments Nos. 27300796 and 27300799 reversed.*

*Costs are not reallocated as part of the judgments of this court pursuant to Maryland rule 1082 f.*