**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James B. PULLEN, Defendant-Appellant.**

No. 82–5332.
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Dec. 23, 1983.

John F. O'Donnell, Fort Lauderdale, Fla., for defendant-appellant.

Stanley Marcus, U.S.Atty., Linda Collins Hertz, Chris Gober, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before HILL, JOHNSON and HENDERSON, Circuit Judges.

PER CURIAM:

James Pullen appeals his convictions of conspiracy to make and of making false statements and reports in connection with loan and credit applications, all in violation of 18 U.S.C.A. §§ 371 and 1014. Appellant was first indicted in February 1977. That indictment was dismissed without prejudice upon the government's motion in June 1977. In September 1979 the nine-count indictment, upon which Pullen was convicted and now appeals, was returned. Pullen was charged in count one with having conspired with two codefendants to make false statements and reports in connection with loan and credit applications. Counts two through nine charged that Pullen made false statements, or caused such false statements to be made, in connection with loan and credit applications.

From 1974 through 1976, Pullen was president of Recreational Vehicle Services, Inc., a finance service company which arranged financing with various banks for purchasers of recreational vehicles. One of these banks was the First National Bank and Trust Company of Lake Worth, Florida. In January 1976, bank officials discovered that many of the installment contracts which the bank had purchased from Pullen's company involved non-existent or double-financed vehicles or fraudulent titles. The bank's

president and vice-president met with Pullen and Bustani, Pullen's codefendant, to discuss the situation. At this meeting, Pullen admitted that a number of the contracts were fraudulent and this included six to eight transactions involving vehicles which did not exist or were double financed. The bank's president contacted the FBI concerning the fraudulent loans obtained by Pullen. Subsequently, the FBI agent, Kizer, and the bank president, Ayres, communicated with each other numerous times and the bank began to provide the FBI agent with documents and information obtained as a result of its own investigation of the fraudulent loans. The bank provided the FBI with a 322-page statement made to bank officials and bank attorneys by Pullen. The statement went into detail in admitting that he had defrauded the bank through the procedure of obtaining contracts that were fraudulent, involving vehicles that did not exist or were doubly financed. In early October 1976 agents of the FBI met with Pullen to question him about the loan transactions. Pullen was informed of his *Miranda* rights, indicated he understood his rights and signed a waiver. The agents showed Pullen numerous documents concerning the fraudulent loan transactions and as Pullen reviewed them he described in detail how he had forged and falsified the necessary information to obtain the financing.

Prior to trial, Pullen filed a motion to suppress any statements he had made to the FBI and officers, employees and attorneys of the bank. He also sought to suppress any evidence obtained as a result of those statements. Additionally, he moved to dismiss the indictment on the ground of impermissible pre-indictment delay. After holding a hearing on his motions, a magistrate recommended that they be denied. Pullen filed timely objections to the magistrate's recommendation and moved for permission to present additional evidence on his motions. The district court adopted the magistrate's recommendation concerning Pullen's motion to dismiss and denied the motion. The court also denied his motion to

suppress but granted Pullen leave to present additional evidence at a hearing to be held immediately before trial on the issue of whether there was a non-prosecution agreement. After Pullen waived his rights to a jury trial and special findings of fact, the court held a combination bench trial and suppression hearing, at the conclusion of which the court denied his motion to suppress and found him guilty as charged.

Pullen raises on this appeal seven issues, viz.: 1) whether the trial court erred in denying Pullen's motion to suppress because the bank was an agent of the FBI; 2) whether the trial court erred in denying Pullen's motion to suppress because his statements to the bank and FBI were involuntary; 3) whether Pullen was denied his right to a speedy trial because the government delayed filing an indictment against him; 4) whether the government's delay in filing an indictment against Pullen violated his due process rights; 5) whether the indictment should have been dismissed pursuant to Fed.R.Crim.P. 48(b); 6) whether there was substantial independent evidence to corroborate Pullen's admissions; and 7) the sufficiency of the evidence.

▮▮▮ A review of the record reflects that the trial court specifically found that no agency relationship existed between the bank and the FBI. This finding is supported by the record and is therefore not clearly erroneous. Pullen's contention that the conduct of the bank and the FBI in their investigation violated his *Miranda* rights is completely without merit. While it is established that the *Miranda* safeguards come into play when an individual is in custody and subjected to interrogation, the *Miranda* safeguards are not applicable to private citizens who conduct an investigation unless they have some connection with the government. *Battie v. Estelle*, 655 F.2d 692, 699 n. 12 (5th Cir.1981).[1] Since the bank was not an agency of the FBI or acting for the FBI, it was not required to advise Pullen of his *Miranda* rights before

1. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent the case law of the former Fifth Circuit rendered prior to October 1, 1981.

questioning him. Consequently, the government was not precluded from using the statements obtained from Pullen by the bank in its prosecution against him. With regard to Pullen's statements to the FBI, the trial court found that Pullen was informed of his rights and voluntarily waived them. The record supports the court's findings and therefore these findings are not clearly erroneous. *See United States v. Jimenez-Diaz,* 659 F.2d 562, 568 (5th Cir. Unit B 1981), *cert. denied,* 456 U.S. 907, 102 S.Ct. 1752, 72 L.Ed.2d 164 (1982). The record reflects that Pullen's contention that his statements were involuntary because of his reliance on a non-prosecution agreement is completely without merit. Consequently, the trial court did not err in denying Pullen's motion to suppress.

Pullen's claim that he was denied the right to a speedy trial is also without merit. The Supreme Court recently stated in *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982), that the right to a speedy trial attaches only when a formal criminal charge is instituted and does not arise until charges are pending. The court held that the speedy trial guarantee is no longer applicable when the government, acting in "good faith," formally drops charges. *Id.* at 7, 102 S.Ct. at 1501. Pullen's contention that he was denied the right to a speedy trial is based upon his assumption that the right arose when the government filed the first indictment. Clearly, his right to a speedy trial was no longer applicable when the government voluntarily dismissed the first indictment. Pullen's due process claim is also without merit. Pre-indictment delay constitutes a violation of a defendant's due process rights if the defendant can show (1) that he incurred substantial prejudice as a result of the government's delay and (2) that the government intentionally employed the delay to gain a tactical advantage. *United States v. Radue,* 707 F.2d 493, 495 (11th Cir.1983). Pullen's evidence completely fails in each respect. Therefore, the district court did not err in denying his motion to dismiss.

In reviewing a claim of insufficient evidence, this Court must view the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), making all reasonable inferences and credibility choices in favor of the jury's verdict. *United States v. Morano,* 697 F.2d 923, 927 (11th Cir.1983). The applicable standard of review is whether a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. *United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc).

Pullen's argument that there was no evidence other than a copy of the bank's 1969 FDIC insurance certificate to show that the bank was insured by the FDIC at the time he committed the fraudulent transactions is erroneous. In this case, the government not only introduced the bank's FDIC insurance certificate to prove that the bank was insured by the FDIC, but it also presented the bank president's testimony that he was president of the bank from 1973 to 1979 and that the bank was insured by the FDIC during that entire period. Consequently, the evidence was sufficient in this respect.

Next, Pullen argues that there was not substantial independent evidence to corroborate Pullen's extrajudicial admissions. A review of the record completely refutes this contention. Considering both the independent evidence and Pullen's admissions, a reasonable trier of fact could find beyond a reasonable doubt that he made false statements and reports to the bank.

Finally, Pullen argues that there was insufficient evidence to sustain his conviction on the conspiracy count. An agreement to conspire may be inferred from the acts of the parties and other circumstantial evidence. *United States v. Cole,* 704 F.2d 554, 557 (11th Cir.1983). Based upon Pullen's admissions and the other independent evidence introduced by the government in the case, a reasonable trier of fact could find beyond a reasonable doubt that there was an agreement be-

tween Pullen and his codefendants to make false statements and reports to the bank and that Pullen committed at least one overt act in furtherance of that agreement. Therefore, the evidence was sufficient to sustain his conviction on the conspiracy count.

Accordingly, Pullen's convictions of conspiracy to make and of making false statements and reports in connection with loan and credit applications in violation of 18 U.S.C.A. §§ 371 and 1014 are AFFIRMED.