485 A.2d 1014

Larry Nathan **LEE**

v.

**STATE of Maryland.**

**No. 132, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Jan. 7, 1985.

170

Julia A. Doyle, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Nicolette Prevost, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen. of Md., Baltimore, Andrew L. Sonner, State's Atty., Rockville, for Montgomery County and Dwight C. Price, Asst. State's Atty., Rockville, for Montgomery County on brief), for appellee.

Submitted before BISHOP, ALPERT and BLOOM, JJ.

ALPERT, Judge.

This speedy trial case is somewhat novel in that Larry Nathan Lee, the appellant, was indicted on two different occasions for the very same offenses. Although the first indictment was dismissed, the second ultimately led to Lee's conviction by a Montgomery County jury for forgery and uttering. At the center of this appeal is whether the speedy trial clock began to tick at the second indictment or when a detainer was filed shortly before the first indictment.

## THE PROCEEDINGS

An arrest warrant was issued against appellant on June 8, 1982, and a detainer was filed with the Division of Correction on June 11, 1982. The original indictment was filed August 5, 1982.[1]

On August 25, 1982, a bench warrant was forwarded to the Maryland Reception Center, where appellant was incarcerated on other charges, to serve as a detainer on the indictment. On August 31, 1982, appellant filed a request in the Montgomery County District Court for disposition on the intrastate detainer. Although a copy of this request was forwarded to the State's Attorney's Office, no action was taken on it until the day trial was to commence—March 8, 1983.[2] The record indicates only that the request for disposition was misplaced in the case file of the State's Attorney's Office. The indictment was dismissed without prejudice on March 8th because of the State's failure to comply with the Intrastate Detainer Act. The period between the indictment and dismissal was approximately seven months.

Appellant was reindicted upon the same charges on March 10, 1983, and a trial date of April 11, 1983, was set. The period of time between the first indictment and this trial date was a little over eight months.

Appellant moved for a continuance on April 11th because his attorney was unable to appear due to a scheduling conflict. A new trial date of August 29, 1983, was set; however, the State moved for a continuance on July 26, 1983, because of the unavailability of the victim. Another new trial date was set for December 12, 1983, and appellant was then tried and convicted on the forgery and uttering charges.

---

1. For the reasons undisclosed in the record, appellant asserted, without disagreement from the State, that the date of original indictment was June 22, 1982.

2. The trial was originally scheduled for March 1, 1983, but was postponed due to the unavailability of one of the State's witnesses.

Appellant now asserts that the trial court erred in denying his motions to dismiss for lack of a speedy trial.[3] Appellant's trial began approximately sixteen months after the first indictment and nine months after the second indictment.

## THE LAW

■■■ The Supreme Court of the United States delineated a four pronged balancing test to determine whether a defendant-appellant has been denied his right to a speedy trial.[4] *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Four factors must be examined and weighed, including: (1) the length of the delay; (2) the reason for the delay; (3) defendant's assertion of his right; and (4) any prejudice to the defendant because of the delay. Before any of these factors can be examined and weighed, however, the appellant must first demonstrate that the length of the delay is of constitutional dimension. 407 U.S. at 530, 92 S.Ct. at 2192. This initial triggering mechanism is further complicated in the case *sub judice* because the appellant was indicted for the same offenses on two separate occasions. Hence, our first and most difficult task is to determine whether the speedy trial analysis begins in June or July 1982 or with the March 1983 indictment.

Although we have not located a Supreme Court or Maryland case which precisely decides the issue, we believe that the reasoning of the Supreme Court in *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982), coupled with the ratiocination of the Court of Appeals in several recent Rule 746 cases, suggests that the

---

**3.** Appellant filed two such motions and they were denied on June 24, 1983, and December 12, 1983.

**4.** This right is contained within the Sixth Amendment of the United States Constitution and Art. 21 of the Maryland Declaration of Rights. These two rights are essentially analogous. *State v. Gee,* 298 Md. 565, 568, 471 A.2d 712 (1984).

date of the first detainer pending the first indictment is the triggering date. We explain.

In *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982), an Army captain was charged in March of 1970 with the murders of his pregnant wife and two children. The military charges were dropped later that year and Captain MacDonald was granted an honorable discharge. 456 U.S. at 4–5, 102 S.Ct. at 1499–1500. Army intelligence continued their investigation of the murders at the request of the Justice Department. Justice evaluated the various Army reports and ultimately submitted the matter to a grand jury. On January 24, 1975, Captain MacDonald was indicted for the murders of his three family members. *Id.* at 5, 102 S.Ct. at 1500. MacDonald was convicted on two counts of second-degree murder and one count of first-degree murder. He appealed these convictions, contending that his Sixth Amendment right to a speedy trial had been violated.

■ MacDonald asserted that the speedy trial clock was triggered by his first indictment. The Supreme Court disagreed and found no constitutional infraction. The Court observed that once the charges were dropped, MacDonald was "in the same position as any other subject of a criminal investigation." *Id.* at 8–9, 102 S.Ct. at 1502. MacDonald's personal liberty was not then restrained by the Government. *Id.* at 9, 102 S.Ct. at 1502. As to the existence of two indictments, the Court opined that "the Speedy Trial Clause has no application after the Government, *acting in good faith,* formally drops charges." *Id.* at 7, 102 S.Ct. at 1501 (emphasis added).[5]

The teachings of *MacDonald* have subsequently been applied by a number of courts. For example, in *United*

---

**5.** The Court further noted that if a complaint arises as to undue delay between the first and second indictments, that delay should be scrutinized under the Due Process Clause. *Id.* at 7, 102 S.Ct. at 1501. In the instant appeal, Lee was reindicted two days later; thus, there is no Due Process issue.

*States v. Pullen,* 721 F.2d 788 (11th Cir.1983), the defendant was indicted on two separate occasions for conspiracy to make and of making false statements and reports concerning loan and credit applications. The first indictment was dismissed without prejudice by motion of the government. 721 F.2d at 789. Pullen was reindicted two years later, convicted, and then appealed, raising a speedy trial issue. Relying on *MacDonald,* the eleventh circuit held that the speedy trial clause "is no longer applicable when the government, acting in 'good faith' formally drops the charges." *Id.* at 791. Similarly, the Colorado Court of Appeals held that the critical time period commenced with the second arraignment, when original charges were dismissed in good faith. *People v. Watson,* 666 P.2d 1114, 1116 (Colo.App.1983).

Although this appeal does not involve the voluntary dismissal of charges by the State, the Supreme Court's recitation of the concept of "good faith" plays an important role in our analysis.

Recent Maryland Rule 746 cases are instructive. We are cognizant that analysis under former Rule 746 (now Maryland Rule 4–271) differs from that employed in Sixth Amendment speedy trial cases. Nevertheless, the reasoning of the Court of Appeals and the concept of good faith lends support to our decision. In *Curley v. State,* 299 Md. 449, 474 A.2d 502 (1984), the State posited that it nol prossed the defendant's case on the basis of insufficient evidence and because of the request made of the State by the family of the victim. The Court of Appeals ruled that although the 180-day period ordinarily would begin anew with the filing of new charges, an exception exists where a nol pros had the purpose or the effect of circumventing the rule. 299 Md. at 462, 474 A.2d 502. Essentially, the Court looked to whether the State's actions were functionally in good faith when the Court said "[r]egardless of the prosecuting attorney's motives, the necessary effect of the nol pros was an attempt to evade the dismissal resulting from

the failure to try the case within 180 days." *Id.* at 463–63, 474 A.2d 502.

A case which *appears* to be *somewhat* similar to the instant case is *State v. Phillips,* 299 Md. 468, 474 A.2d 512 (1984), another Rule 746 case. There the first indictment was dismissed on the defendant's motion that the charging documents were defective. The Court of Appeals distinguished between those charges which are nol prossed and those dismissed on the defendant's motion. "In the latter situation, courts generally hold that the speedy trial period prescribed by statute or rule begins running anew with the second prosecution." 299 Md. at 471, 474 A.2d 512. Thus, the second indictment was deemed the starting date of the 180-day period.

The instant appeal is distinguishable from *Phillips* in two respects. First, here we are dealing with a constitutional issue as opposed to a specific time period governed by a rule or statute. Second, the defendant's motion in *Phillips* was acted upon in a timely manner, as opposed to seven and one-half months after it was filed.

Returning to *MacDonald* and its progeny—there the second indictment served to commence the critical time period because of the government's exercise involving good faith.[6] In these cases the government did not deliberately attempt to circumvent the mandate of the Sixth Amendment by dismissing the charges. Instead, a sound prosecutorial decision was made. While this is not the situation referred to in footnote 12 of *MacDonald,* 456 U.S. at 10, 102 S.Ct. at 1503, where charges were dropped to avoid the consequences of the speedy trial rule, neither is this a case where the good faith apparent in MacDonald is evident. "Good faith" in this context presupposes the diligence apparent in

---

**6.** *See also Ward v. State,* 30 Md.App. 113, 128, 351 A.2d 452, *cert. den.,* 277 Md. 742 (1976) (good faith dismissal of murder charges for want of probable cause is reasonable and proper, hence, not a period counted against the State). This case was decided several years before MacDonald, but also recognized the importance of good faith by the State.

*MacDonald* in bringing a case to trial; there, after the dismissal of the military charges, the civilian ones were not brought until a much more extensive investigation was completed. *See also State Farm Ins. Co. v. White*, 248 Md. 324, 332–33, 236 A.2d 269 (1967) (good faith in the context of an insurance policy means "being faithful ... to the duty or obligation owed"; negligence is relevant in determining whether one acted in good faith).

In the instant appeal, the charges were dismissed by the Circuit Court of Montgomery County because of the State's failure to comply with the Intrastate Detainer Act. The appellant recognized his rights under the Detainer Act and on August 31, 1982, filed a request for disposition on the detainer; however, there was no action taken until the day trial was to begin, March 8, 1983. On that date the indictment was dismissed and two days later appellant reindicted. Clearly the nine month delay present here and the immediate reindictment is not indicative of any due diligence on the part of the State.

More than a decade ago, the Court of Appeals recognized that detainers may result in "undue and oppressive incarceration" and that "[i]n an effort to ameliorate such conditions, which were found to 'produce uncertainties which obstruct programs of prisoner treatment and rehabilitation' and in order 'to encourage the expeditious and orderly disposition of such charges,' the General Assembly ... enacted the Intrastate Agreement on Detainers Act." *State v. Barnes*, 273 Md. 195, 205–06, 328 A.2d 737 (1974). Subsequently, we observed that "[i]n order to redress the existing grievances, the operative state officials are charged with taking the necessary steps to bring the pending case to trial, once their attention has been brought to the inmate's request for such action." *Wise v. State*, 30 Md.App. 207, 210, 351 A.2d 160 (1976). Perhaps the most essential of those "operative state officials" is the State's Attorney. Cast upon that office is the solemn duty to effectuate the General Assembly's clear mandate—to bring the case to trial promptly and in accordance with the

statute.[7]  Neglect of that duty is to perpetuate rather than obviate the mischief that the Intrastate Detainer Act sought to remedy.  The negligent misplacing of appellant's request for disposition which caused dismissal of the indictment, although not amounting to bad faith, simply is not the same as a good faith dismissal sanctioned by the *MacDonald* court.  Consequently, we look to the period of the first indictment to determine when the speedy trial clock began to tick.

The date of the first indictment, however, is not the triggering date.  A detainer was filed against appellant on June 11, 1982, while he was incarcerated in another jurisdiction within the State.  It was at this time that appellant was actually restrained as if arrested.  In *State v. Gee*, 298 Md. 565, 471 A.2d 712 (1984) the Court of Appeals, while falling short of recognizing the filing of the detainer as the triggering date, nonetheless noted the similarity between an arrest and a detainer.  Judge Orth, speaking for the Court, said that a detainer

> [l]ike an arrest, ... placed a restraint on Gee, seriously interfering with his liberty, by precluding his freedom upon release from incarceration by reason of the other convictions, and by its impact on such prison privileges he may have enjoyed.  It may be said that the detainer subjected him to further public obloquy, and created anxiety in him, his family and his friends, as with an actual arrest.

298 Md. at 577–78, 471 A.2d 712 (footnotes omitted).  We believe that the restraints the detainer placed upon appellant's liberty were sufficient to satisfy the requirements of

---

7.  The legislature made clear its intention of assigning a special accountability to the State's Attorney by providing that "the prisoner *shall* be brought to trial within 120 days after he has delivered (1) to the State's Attorney ... his written request for a final disposition to be made of the indictment...."  Md.Ann.Code art. 27, § 616S(b) (emphasis added) and by further requiring that the "officer having custody of him ... file within 30 days the prisoner's request for final disposition ... with the appropriate State's Attorney...."  Md.Ann. Code art. 27, § 616S(d) (1957, 1982 Repl. Vol.).

"a formal indictment or information or . . . the actual restraints imposed by arrest," all of which activate the speedy trial clock. *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971). Accordingly, we hold that the speedy trial clock began to tick as of June 11, 1982, the date the detainer was filed on the first indictment. The period of time between the filing of the detainer and the first trial date was nine months.

### 1. *Length of Delay*

Eighteen months ensued from the filing of the detainer on June 11, 1982 (the triggering date) to the date of Lee's conviction by a Montgomery County Jury on December 12, 1983. This delay was one of constitutional dimension. *See Smith v. State*, 276 Md. 521, 350 A.2d 628 (1976) (16 months) and *Epps v. State*, 276 Md. 96, 345 A.2d 62 (1975) (12½ months).

### 2. *The Reason for the Delay*

The accountable period of delay begins June 11, 1982, the date of the detainer, and ends December 12, 1983, the date of trial. Appellant filed the request for disposition on the intrastate detainer on August 31, 1982. The trial was originally scheduled for March 1, 1983, but had to be postponed one week because one of the State's witnesses was not available. The first delay, totaling approximately nine months, is attributable to the State's negligent failure to respond to the disposition request.[8] In *Brady v. State*, 291 Md. 261, 434 A.2d 574 (1981), the State failed to locate Brady to inform him of the charges lodged against him, despite the fact that Brady was then in custody on an unrelated charge. 291 Md. at 267, 434 A.2d 574. The Court

---

8. *See Powell v. State*, 56 Md.App. 351, 359–62, 467 A.2d 1052 (1983) (discussing indifference on the part of the State relating to a detainer); *Wilson v. State*, 44 Md.App. 1, 10, 408 A.2d 102 (1979), *cert. den.*, 286 Md. 755 (1980), *cert. den.*, 446 U.S. 921, 100 S.Ct. 1858, 64 L.Ed.2d 275 (1980) (delay caused by State's negligence falls somewhere between "great" and "little" as weight against the State and directly increases in weight in proportion to its length).

observed that "[t]his prosecutorial indifference tips the scales most heavily in Brady's favor." *Id.* The State's neglect in this case is analogous to this prosecutorial indifference in *Brady,* and therefore, this period must be weighed heavily against the State.

Appellant was reindicted on the same charges on March 10, 1983, and trial was scheduled to commence on April 11th. This is a reasonable period of time for trial preparation.

Although in *Wilson v. State,* 44 Md.App. 1, 408 A.2d 102 (1979), *cert. denied,* 286 Md. 755, *cert. denied,* 446 U.S. 921, 100 S.Ct. 1858, 64 L.Ed.2d 275 (1980); *Powell v. State,* 56 Md.App. 351, 467 A.2d 1052 (1983), *cert. denied,* 299 Md. 137, 472 A.2d 999 *recon. denied,* 299 Md. 656, 474 A.2d 1345 (1984) and *Borgen v. State,* 58 Md.App. 61, 472 A.2d 114, *cert. denied,* 300 Md. 483, 479 A.2d 372 (1984) we allotted as much as six months, we did so because we believed the time was necessary for the orderly process of the case. *Borgen,* 58 Md.App. at 73, 472 A.2d 114; *Powell,* 56 Md.App. at 361–62, 467 A.2d 1052; *Wilson,* 44 Md.App. at 6–7, 408 A.2d 102. We note, however, that in *Brady,* where the State failed to locate the defendant, the Court of Appeals allotted no time for either reasonable preparation of the case or for its orderly processing.

In *Wilson,* we suggested that the 180-day period, within which a defendant must be tried under then Maryland Rule 746 [9] and art. 27 § 591 of the Maryland Code, was a "statutory guide" which provided the "maximum" period of time allowed for the "orderly procedure period." We recognized "the Wilson formula" in *Powell* and *Borgen.* To the extent that *Wilson* commands the application of an inflexible rule mandating a 180-day period for trial preparation or "orderly [pre-trial] procedures," we retreat from such notion. The period of time to be allocated for orderly pretrial preparation and procedure must be decided on an *ad hoc* basis.

---

**9.** This rule has now been recodified as Maryland Rule 4–271.

Preparation for a simple case obviously would require far less time than preparation for the prosecution of a complex one. Under the circumstances of the instant case, the State cannot be credited with any time for "orderly procedure" during the period between the filing of the detainer and the first trial date; the request, under the Detainer Act, which should have been acted upon promptly was overlooked due to misfiling. We cannot, therefore, allocate an undetermined period of time for a process that was never followed notwithstanding the fact that the record does indicate that the State had apparently prepared for the first trial date.

The State ought not, however, forfeit the preparation time related to the second indictment. Thus, crediting to the State the period of time between March 10, 1983 and April 11, 1983 for reasonable preparation, the State is responsible for a nine month delay.

On April 11th, the appellant moved for a continuance because his attorney had a scheduling conflict. The trial was rescheduled for August 29, 1983. This four month delay came at the behest of the appellant and cannot be weighed against the State. *Jones v. State*, 279 Md. 1, 7, 367 A.2d 1 (1976), *cert. den.*, 431 U.S. 915, 97 S.Ct. 2177, 53 L.Ed.2d 225 (1977).

On July 26, 1983, the State filed a motion for continuance because the victim was unavailable. The record indicates that the State's Attorney's Office was informed on the 15th of July 1983 that the victim was unavailable for two weeks beginning August 20, 1983, as he was getting married and would be out of the country at that time. This two-week period necessarily included the August 29th trial date. The trial date was again rescheduled, this time for December 12, 1983. This four-month period is neutral, *i.e.*, not adversely attributable to either side. *Jones*, 279 Md. at 7, 367 A.2d 1.[10]

---

**10.** The case *sub judice* is unlike the situation presented in *Smith v. State*, 276 Md. 521, 350 A.2d 628 (1975) where a delay caused by the

### 3. Defendant's Assertion of Right

The appellant filed two motions to dismiss for lack of a speedy trial. The first motion was denied on June 24, 1983, and a second motion was denied on the day of trial, December 12, 1983.

### 4. Prejudice to the Defendant

In *Barker v. Wingo,* 407 U.S. 514, 532, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101 (1972), the Court identified three possible prejudices.

> This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

In the instant case, the appellant was jailed on unrelated charges during the eighteen month period. In February, 1983, appellant had a parole hearing on these unrelated charges; "[h]e was refused, administratively, because of the pending charges" represented by the June 11 detainer. Thus, the detainer rendered him ineligible for parole at that time and possibly served to lengthen his pretrial incarceration period.

---

unavailability of a witness was chargeable against the State. In *Smith* the State requested a continuance because a witness was unavailable; on appeal the court noted the State only began looking for the witness one week before trial and charged the State for the delay. Here the State was apprised of the unavailability of the victim six weeks prior to trial and promptly moved for a continuance.

In *Powell v. State,* 56 Md.App. 351, 467 A.2d 1052 (1983), this Court recognized possible prejudices when the defendant was denied transfers to a lower security area and a half-way house.[11] Powell was also subject to an outstanding detainer at the time of the rejections. *Id.* at 366, 467 A.2d 1052. Here, as in *Powell,* there is no evidence that the appellant's ability to present a defense was impaired. As the Court of Appeals noted in *Jones v. State,* 279 Md. at 16, 367 A.2d 1, however, "an affirmative demonstration of prejudice is not necessary to prove that a defendant was denied his constitutional right to a speedy trial." Appellant Lee has demonstrated at least some potential prejudice in that his parole was refused administratively because of the pending charges.

### THE BALANCING

■ The total length of the delay was substantial and approximately 50% of it was attributable to the State's neglect. Only four months is attributable to the appellant's request for a continuance, and an additional four months can be characterized as neutral, based on the unavailability of the victim. Determining whether Lee's constitutional rights have been violated is not a matter of simple arithmetic. Instead, the four-factor test must be applied. *Powell v. State,* 56 Md.App. at 367, 467 A.2d 1052 (citing *Erbe v. State,* 276 Md. 541, 350 A.2d 640 (1976)).

One of the purposes of the Intrastate Detainer Act is to avoid delays such as the one present here. The legislature recognized that detainers obstruct the rehabilitation and treatment programs—one of the societal interests to be protected through preservation of the speedy trial right. *Barker v. Wingo,* 407 U.S. at 519–20, 92 S.Ct. at 2186–87. The policy of the Intrastate Detainer Act is to "encourage the expeditious and orderly disposition" of charges repre-

---

**11.** It should be noted that Powell did not prevail in his appeal because of the lengths of delay attributable to him. This Court did explore the possibility of various prejudices which are relevant herein.

sented by detainers. Md.Ann.Code art. 27 § 616S(a) (1957, 1983 Repl. Vol.). Considering this policy along with the societal interest in preserving the speedy trial right,[12] we believe that the neglect demonstrated by the State over a period of nine months should be weighed heavily against it. This neglect is quite similar to the "prosecutorial indifference" present in *Brady v. State,* 291 Md. at 267, 434 A.2d 574. That period of approximately nine months was the longest single period of delay and as such had the most significance. Thus, weighing the conduct of the State and the appellant, coupled with the potential prejudice to the appellant, we hold that the appellant was denied his right to a speedy trial.

JUDGMENTS REVERSED; MONTGOMERY COUNTY TO PAY THE COSTS.

---

**12.** "Another concern [in securing the speedy trial of criminal defendants] is the potential weakening of the criminal law system when defendants take advantage of congested court calendars to manipulate the plea bargaining system." Whitebread, *Criminal Procedure* (1980) § 23.01.